Pauline **KOZIARA** & **Seminole Entertainment, Inc.** d/b/a **Rachel's**, Plaintiffs,

v.

**CITY OF CASSELBERRY,** Defendant.

No. 6:02CV828–ORL–31KRS.

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 10, 2002.

R. Steven Ruta, Victor L. Chapman, Barrett, Chapman & Ruta, P.A., Orlando, FL, Steven Gerald Mason, Law office of Steven G. Mason, Orlando, FL, for plaintiff.

Usher L. Brown, Anthony A. Garganese, Brown, Ward, Salzman & Weiss, P.A., Orlando, FL, for defendant.

## ORDER

PRESNELL, District Judge.

This Court has for its consideration Defendant's Motion to Dismiss (Doc. 11), Defendant's Memorandum of Law (Doc. 12), Plaintiffs' Response to Defendant's Motion (Doc. 19), Plaintiffs' Motion for Preliminary Injunction (Doc. 8), and Defendant's Response thereto (Doc. 16). The Court converted Defendant's Motion to Dismiss

(Doc. 11) to a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 (Doc. 14). The Court heard oral argument on the Defendant's Motion for Summary Judgment and the Plaintiffs' Motion for Preliminary Injunction on September 27, 2002. On November 8, 2002, the Court ordered the Defendant to supplement the record with all filings in the state court proceedings between the parties. The Court has carefully considered the motions and responses including the accompanying memoranda, affidavits, and exhibits, the supplemental filings, the transcript from the hearing, and is otherwise fully advised in the premises.

## I. INTRODUCTION

Plaintiffs, Pauline Koziara ("Koziara") and Seminole Entertainment, Inc., d/b/a Rachel's ("Seminole Entertainment" or "Rachel's"), seek a declaratory judgment, as well as both a preliminary and permanent injunction, against Defendant, the City of Casselberry ("Casselberry"). In their complaint, Koziara and Rachel's assert a claim against Casselberry pursuant to 42 U.S.C. § 1983 for allegedly violating their rights under the First, Fifth, and Fourteenth Amendments when Casselberry revoked Rachel's license to operate an adult entertainment establishment. Ko-

---

1. The Court accepts as true Rachel's allegations and views all record evidence in the light most favorable to Rachel's as required under the summary judgment standard.

2. A time line of events can be found in Appendix A.

3. Rachel's is also known as Rachel's Steakhouse and Rachel's North.

4. The officers and directors of Seminole Entertainment, James Veigle, Charles Veigle, Nancy Voegtlin, and Robert Kelly, are also officers and directors of a second corporation, Beeline Entertainment, Inc., which operates an adult entertainment establishment in South Orlando known as Rachel's South.

ziara and Rachel's ask this Court to (1) declare the Casselberry ordinance unconstitutional and (2) enter an injunction prohibiting Casselberry from enforcing its ordinance and revoking Rachel's license. In response, Casselberry has filed a motion to dismiss, which this Court treated as a motion for summary judgment, contending that Rachel's claims are barred by the doctrine of res judicata.[1]

## II. FACTS [2]

### A. Revocation of Rachel's License

Seminole Entertainment, Inc. d/b/a/ Rachel's has operated an adult entertainment establishment under the name of Rachel's [3] at its present location on State Road 436 in Casselberry, Florida since approximately March 1990.[4] For over ten years, Rachel's offered erotic dancing and striptease entertainment, as well as food and alcoholic beverages, to its patrons. Pauline Koziara was a dancer at Rachel's until Rachel's license was revoked.

On June 9, 1999, the City of Casselberry passed an ordinance providing for suspension and/or revocation of adult entertainment licenses upon a showing that the licensee [5] knowingly allowed the sale or possession of controlled substances, prostitution, or the performance of sex acts or simulated sex acts as defined in the ordi-

---

Neither Beeline Entertainment nor Rachel's South are parties to this action.

5. The ordinance defines a "licensee" as "Any person, corporation, partnership, or other entity whose application for an adult entertainment establishment or sexually oriented business license has been granted and any person, corporation, partnership or other entity who owns or operates or controls the establishment." Further, an "operator" is defined as "Any person who engages in or performs any activity which is necessary to or which facilities (sic) the operation of a sexually oriented business or an adult entertainment establishment including, but not limited to, the licensee, manager, owner, doorman, bouncer, bartender, disc jockey, sales clerk, ticket taker,

nance to occur on the premises.[6] On January 29, 2000, an undercover investigation of Rachel's began. The investigation involved several local law enforcement agencies. The law enforcement officers involved in the investigation posed as well-to-do businessmen and the owner of an escort service.[7] The undercover officers found numerous criminal activities as well as violations of the ordinance during the investigation. These included: (1) sales of illicit drugs to undercover officers either by a worker of Rachel's or set up by a manager of Rachel's; (2) several acts of prostitution; and (3) numerous sex acts, simulated sex acts, displays of female genitalia, and prohibited physical contact between the dancers and the undercover officers or patrons.[8] The investigation of Rachel's ended in July 2000. But the investigation into the individual officers of Seminole Entertainment continued until December 27, 2000.

On August 29, 2000, Rachel's applied for license renewal under the new ordinance. Casselberry granted the license on October 1, 2000. On November 10, 2000, Rachel's received a Notice of Revocation of Adult Entertainment License, which was amended on November 14, 2000. Rachel's filed its challenge to the revocation and requested a hearing on November 21 or 22, 2000. On December 4, 2000, Rachel's moved to disqualify the City Commission and Mayor. On December 14, 2000, the Casselberry City Commission denied Rachel's Motion.

Hearings on the revocation were held by the Casselberry City Commission with the Mayor presiding on December 14, 27, and 28, 2000. Casselberry was represented by the City Manager through counsel, Michael Kahn. Rachel's was represented by attorneys, D. Gray Thomas and Victor Chapman.

All of the undercover officers involved in the investigation testified to the numerous criminal activities they witnessed. At least one witness testified that he used his credit card to obtain funds to purchase drugs and that Rachel's added a 10% surcharge to this transaction. The transaction was conducted by one of the managers of Rachel's. Further, managers and doormen received tips and acted as lookouts for the acts of prostitution or the prohibited sexual activities that occurred. It was also uncovered that a bookkeeper had been providing information to the officers during the investigation, and that after the investigation concluded and arrests of the workers, managers, and doormen were made, several more employees agreed to cooperate with law enforcement in their investigation of Seminole Entertainment.

During the hearings, counsel for Rachel's cross-examined Casselberry's witnesses. Although Rachel's counsel was given the opportunity to call witnesses on Rachel's behalf, counsel chose to forgo this opportunity. Instead, in closing argument, counsel admitted that drug sales and prostitution occurred on the premises, but argued that the officers and directors of Seminole Entertainment were not aware of the illegal activities. Casselberry, on the other hand, asserted that "licensee" was

---

movie projectionist, dispatcher, receptionist, attendant or supervisor." Casselberry Code of Ordinances § 14–70.

**6.** The relevant portions of the Casselberry Code of Ordinances §§ 14–92 and 14–93, which are at issue in this case, are printed in Appendix B.

**7.** Around this same time, an investigation of Beeline Entertainment and Rachel's South was also conducted by the same undercover officers.

**8.** The prohibited sexual activities are enumerated and defined in § 14–70 of the Casselberry Code of Ordinances.

broadly defined in the ordinance and that under the ordinance definition Casselberry had proved knowledge of the licensee. The City also argued that the pervasiveness of the illegal activity showed that the officers and directors of Seminole Entertainment either knew or should have known about the criminal activities occurring at Rachel's.

The Casselberry City Commission agreed to accept proposed findings of fact and conclusions of law from the City Manager and Rachel's. The Commission met again on January 9, 2001 to publicly discuss the matter. During this meeting, Commissioner Henson disqualified himself from participating in the decision. On January 16, 2001, the City Commission began its deliberations. It also stated that despite the ordinance requiring that the violation be proven by a preponderance of the evidence, the Commission would use the higher clear and convincing evidence standard.[9] On January 31, 2001, the Casselberry City Commission entered its findings of fact and conclusions of law finding by clear and convincing evidence that the ordinance had been violated and that the owners of Seminole Entertainment, James Veigle, Charles Veigle, Nancy Voegtlin, and Robert Kelly, knew or should have known about the illegal acts and prohibited conduct of the managers, doormen,[10] and workers because of the pervasiveness of the conduct.[11] The license was revoked for two years, beginning February 1, 2001.

## B. Rachel's Petition for Writ of Certiorari (Appeal of Revocation)

On March 2, 2001, Rachel's filed a Petition for Writ of Certiorari ("Certiorari Petition") with the Circuit Court for the Eighteenth Judicial Circuit in and for Seminole County Florida, case number 01–23–AP. In its Certiorari Petition, Rachel's argued that revocation of its license implicated freedom of expression under the First Amendment to the U.S. Constitution, as well as several provisions of the Florida Constitution. Specifically, Rachel's asserted that (1) it was denied a neutral, unbiased factfinder because the City Commission refused to disqualify itself; (2) no due process was afforded Rachel's at the hearing as guaranteed by Article I, Section 9, of the Florida Constitution (the revocation notice was constitutionally insufficient, City relied on impermissible hearsay, Rachel's cross-examination of witnesses was limited, and Rachel's could not subpoena witnesses); (3) there was insufficient evidence that the officers and directors of Seminole Entertainment knew of the illegal activities occurring on the premises; (4) the ordinance vested unbridled and unfettered discretion with the City Commission and the ordinance and revocation order constituted an unconstitutional prior restraint of expression in violation of Article I, Section 4, of the Florida Constitution; (5) Casselberry relied on the wrong standard, to wit: preponderance of the evidence, in rendering its decision and improperly shifted the burden to Rachel's; and (6) the ordinance did not provide prompt judicial review or a stay pending review by the courts. In its Certiorari Petition, Rachel's relied heavily on federal case law in making its arguments. Rachel's requested the Circuit Court to issue a writ of certiorari directing Casselberry to vacate its order revoking Seminole En-

---

9. Counsel for Casselberry requested the City Commission to deliberate and consider the evidence under the clear and convincing evidence standard rather than the preponderance of the evidence standard as required by the ordinance.

10. Managers and doormen are defined as operators of Rachel's in Casselberry Code of Ordinances § 14–70.

11. Commission Henson did not render an opinion.

tertainment's adult entertainment license. On March 7, 2001, Rachel's filed a Motion to Stay the license revocation pending the Circuit Court's review of the Certiorari Petition arguing that the case implicated the First, Fifth, and Fourteenth Amendments.[12]

On July 17, 2001, the Honorable Debra Nelson, Circuit Judge, denied Rachel's Certiorari Petition and affirmed the revocation of Rachel's license finding that Rachel's had failed to show that there was a denial of due process, the essential requirements of law were not followed by Casselberry, or that the City's findings were not supported by competent and substantial evidence. In the opinion, Judge Nelson addressed each of Rachel's six arguments in turn finding each one to be without merit. In her opinion, Judge Nelson relied on federal case law when she determined that Rachel's substantive due process rights were not violated. Rather, Casselberry had punished the illegal activity by revoking the license. Casselberry did not engage in an unlawful prior restraint of First Amendment expression. Also, in considering Rachel's assertions that prompt judicial review meant a prompt judicial decision, Judge Nelson adopted the reasoning of the Eleventh Circuit Court of Appeals in *Boss Capital v. City of Casselberry*, 187 F.3d 1251 (11th Cir.1999), which held that prompt judicial review meant prompt judicial access in a case looking at a judicial review provision identical to the one found in the Casselberry Code of Ordinances § 14–93.

On August 3, 2001, Rachel's petitioned the Fifth District Court of Appeal ("Fifth DCA") for a second-tier certiorari review (an appeal), case number 5D01–2312, of the Circuit Court's denial of its Certiorari Petition. Again relying on federal and state law, Rachel's asserted that (1) Rachel's was denied a neutral, unbiased factfinder because the City Commission refused to disqualify itself; (2) the ordinance vested unbridled and unfettered discretion with the City Commission and the ordinance and revocation order constituted an unconstitutional prior restraint of expression in violation of Article I, Section 4, of the Florida Constitution; (3) the notice of revocation was legally insufficient; (4) inadmissible hearsay invalidated the proceedings; (5) it was denied the right to confront or subpoena witnesses; (6) the Circuit Court did not apply the correct legal standard in determining whether the evidence supported revocation; (7) Casselberry relied on the wrong standard, to wit: preponderance of the evidence, in rendering its decision and the Commission improperly shifted the burden to Rachel's; and (8) the ordinance did not provide prompt judicial review or a stay pending review by the courts. Rachel's requested the Fifth DCA to issue a writ of certiorari directing the Circuit Court to instruct the City to vacate its order revoking Seminole Entertainment's adult entertainment license. On March 22, 2002, the Fifth DCA affirmed the denial of the Certiorari Petition by written opinion concluding that its scope of review was limited to whether the Circuit Court afforded procedural due process and applied the correct law quoting *Haines City Community Development v. Heggs*, 658 So.2d 523, 530 (Fla.1995).

Following the Fifth DCA's opinion, Rachel's filed several post-opinion motions. The post-opinion motions were denied by the Fifth DCA on April 19, 2002. On April 30, 2002, Rachel's sought review of the Fifth DCA's opinion with the Florida Supreme Court, case number SC02–1032. That Petition is still pending.

12. Both Rachel's and Casselberry relied heavily on federal case law in making their arguments on various motions in the Certiorari Petition case.

## C. Rachel's Declaratory Judgment Action and Request for Permanent Injunction

On February 1, 2001, one month prior to the Certiorari Petition, Rachel's filed a complaint in the Circuit Court for the Eighteenth Judicial Circuit in and for Seminole County, Florida, case number 01–CA–244–16–P, seeking a declaratory judgment and permanent injunction. In that complaint, Rachel's made both facial and as-applied challenges to the constitutionality of the ordinance, revocation proceedings, and revocation order to wit: (1) it was denied a fair hearing because the Commissioners were biased and would not disqualify themselves, (2) no due process was provided, (3) sections 14–92 and 14–93 are unconstitutionally vague, (4) the ordinance vests unbridled discretion with the City, (5) the ordinance does not provide an opportunity to remedy prior to suspension or revocation, (6) the City's decision was based on impermissible hearsay and Rachel's did not have an opportunity to subpoena witnesses, (7) Casselberry relied on the wrong standard, to wit: preponderance of the evidence, in rendering its decision and the Commission improperly shifted the burden to Rachel's, (8) the revocation order is a content-based order in violation of the constitution, (9) the revocation process violates due process and equal protection, (10) the revocation order does not further a substantial government interest and is not the least-restrictive means to achieve the City's goal, (11) the revocation order constitutes a taking, (12) the revocation procedure applies a preponderance of the evidence standard and this was not cured by the City's application of the clear and convincing evidence standard, (13) there is no avenue for prompt judicial review, (14) there was no evidence that the owners knew of the illegal activity, (15) the ordinance does not provide for basic due process and a fair hearing, and (16) the notice of revocation was constitutionally insufficient. On February 2, 2001, Rachel's filed a Motion for a Temporary Injunction.[13] Due to the unavailability of counsel, the hearing on Rachel's Motion was not held until March 9, 2001 before Judge Nelson. On March 15, 2001, Judge Nelson denied the temporary injunction.[14]

On March 16, 2001, Rachel's filed an appeal with the Fifth DCA, case number 5D01–811. On November 30, 2001, the Fifth DCA reversed the denial of the temporary injunction concluding that Rachel's had been denied due process during the revocation hearing. However, the temporary injunction would only remain in effect

13. In the Motion, Rachel's argued that (1) the City Commission was biased and Rachel's did not receive a fair hearing; (2) the ordinance is unconstitutionally vague; (3) the Commission had unbridled and unfettered discretion; (4) sections 14–92 and 14–93 of the code constituted an unlawful prior restraint; (5) the hearing was based on impermissible hearsay; (6) Rachel's did not have a right to subpoena witnesses; (7) the hearing violated both procedural and substantive due process; (8) the notice of revocation did not give constitutionally sufficient notice; (9) the City Commission improperly shifted the burden to Rachel's; (10) the revocation procedure violates equal protection and due process guarantees under the Florida Constitution; (11) the revocation order was not the least-restrictive mean to achieve the City's goal; (12) the revocation order constituted a taking; (13) there was no evidence that officers and directors of Seminole Entertainment knew of illegal activity; (14) there is no avenue for prompt judicial review; and (15) there was no competent and substantial evidence that any person committed illegal acts within the scope of authority.

14. Like the motions and papers in the Certiorari Petition case, Rachel's and Casselberry extensively used federal case law in supporting their arguments in the Declaratory Judgment case.

until the merits panel decided the certiorari appeal in case number 5D01–2312. Both Rachel's and Casselberry filed numerous post-opinion motions. On December 20, 2001, the Fifth DCA entered an opinion on a motion for clarification ordering the Circuit Court to enter the temporary injunction. On April 5, 2002, the temporary injunction was dissolved by Judge Nelson. Pursuant to stipulation, Casselberry agreed to do nothing to enforce its ordinance until April 17, 2002. The Fifth DCA issued its mandate on April 17, 2002 and denied the various post-opinion motions.

On June 26, 2002, Rachel's filed a Motion for Summary Judgment on its Declaratory Judgment Action with the Circuit Court. On August 8, 2002, Casselberry filed a Cross–Motion for Summary Judgment. Judge Nelson entered an order granting summary judgment for Casselberry denying Rachel's request for a permanent injunction on October 28, 2002. Judge Nelson concluded that consideration of Rachel's position was barred on the grounds of res judicata because "[t]he order entered in case number 01–23–AP [the Certiorari Petition], which was affirmed by the Rachel's II panel [at the Fifth DCA], has addressed each argument presented by [Rachel's] in the summary judgment motion." On November 12, 2002, Rachel's filed an appeal of the order granting summary judgment with the Fifth DCA, case number 5D02–3605. As of the date of this Order, no action has been taken by the Fifth DCA on the appeal.

**D. Rachel's Federal Suit for Declaratory Judgment Action and Request for Permanent Injunction under 42 U.S.C. § 1983**

On July 22, 2002, Rachel's and Koziara filed a Complaint for Declaratory Judgment and Permanent Injunction in this Court pursuant to 42 U.S.C. § 1983 for violating their rights under the First, Fifth, and Fourteenth Amendments. In its Complaint, Rachel's asserted that (1) sections 14–92 and 14–93 of the Casselberry ordinance violate due process and constitute an unconstitutional prior restraint in violation of the First, Fifth, and Fourteenth Amendments; (2) there is no provision for prompt judicial review in the ordinance or a stay; (3) the ordinance constitutes an unconstitutional prior restraint because it prohibits the presentation of entertainment that is protected by the First and Fourteenth Amendments; and (4) the ordinance does not further a substantial government interest and is not the least-restrictive means to further Casselberry's interests. Both Rachel's and Casselberry have cited much of the same law to this Court that they cited to the state courts.

On August 6, 2002, Rachel's filed a Motion for Preliminary Injunction. On August 20, 2002, Casselberry filed a Motion to Dismiss Rachel's Complaint on the grounds of res judicata. The Court converted Casselberry's Motion to a Motion for Summary Judgment. Rachel's filed its Response. On September 27, 2002, this Court held a hearing on Rachel's Motion for Preliminary Injunction and Casselberry's Motion for Summary Judgment. On November 8, 2002, the Court ordered the City of Casselberry to supplement the record with all filings in the state court proceedings between the parties. Casselberry complied with that Order and has since supplemented the record.

**III. STANDARD OF REVIEW**

A party is entitled to judgment as a matter of law when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Id.* at 323, 106 S.Ct. 2548. In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. If the record presents factual issues, the court must not decide them, but rather, must deny the motion and proceed to trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981).[15]

## IV. ANALYSIS

### A. Res Judicata

■■■ As a general rule, the doctrine of res judicata, also called claim preclusion, bars parties from re-litigating matters that were litigated or could have been litigated in an earlier suit. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir.1998); *I.A. Durbin, Inc. v. Jeffer-*

son *Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir.1986). In order to establish the defense of res judicata, four elements must be met: (1) there must be a final judgment on the merits; (2) the decision must be rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, must be identical in both suits; and, (4) the same cause of action must be involved in both cases. *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269–70 (11th Cir.2002) (citing *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir.), *cert. denied*, 534 U.S. 827, 122 S.Ct. 66, 151 L.Ed.2d 33 (2001)); *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir.1990); *I.A. Durbin*, 793 F.2d at 1549; *Albrecht v. State*, 444 So.2d 8, 11–12 (Fla.1984), *superceded by statute on other grounds as stated in, Bowen v. Florida Dep't of Env't Regulation*, 448 So.2d 566, 568 (Fla. 2d DCA 1984) (citations omitted) ("It has been well settled by this court that several conditions must occur simultaneously if a matter is to be made res judicata: identity of the thing sued for; identity of the cause of action; identity of parties; identity of the quality in the person for or against whom the claim is made.").[16]

■■■ Furthermore, federal courts must give the same preclusive effect to a state-court judgment as the state courts would give it. *Sharpley v. Davis*, 786 F.2d 1109, 1111 (11th Cir.1986) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465

**15.** All decisions of the Fifth Circuit prior to October 1, 1981 are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**16.** Although the parties have not briefed the issue, it appears that this Court must apply state law on the doctrine of res judicata to this case. *See Migra*, 465 U.S. at 81, 104 S.Ct. 892; *see also NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir.1990) ("Federal courts apply the law of the state in which they sit

with respect to the doctrine of res judicata."). Nevertheless, the question is academic because it seems that both federal and Florida principles of res judicata require virtually identical elements with the thrust of both being that the cause of action in the first and second lawsuit is the same. *Compare Durbin*, 793 F.2d at 1549, *with Florida Dept. of Transp. v. Juliano*, 801 So.2d 101, 105 (Fla. 2001) *and Gomez–Ortega v. Dorten, Inc.*, 670 So.2d 1107, 1108 (Fla. 3d DCA 1996).

U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (affirming grant of summary judgment for plaintiff in § 1983 suit where plaintiff brought successful state court action for reinstatement); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)). State judicial proceedings have the same full faith and credit in every court within the United States as they have in the courts of the State from which they are taken because "it is more important to give full faith and credit to state court judgments than to ensure separate forums for federal and state claims." *Sharpley,* 786 F.2d at 1111 n. 1 (citing 28 U.S.C. § 1738 and quoting *Migra,* 465 U.S. at 84, 104 S.Ct. 892). This applies to claims brought pursuant to 42 U.S.C. § 1983. *Migra,* 465 U.S. at 84–85, 104 S.Ct. 892; *Allen,* 449 U.S. at 101, 103–04, 101 S.Ct. 411. A § 1983 suit in federal court would be barred if (1) the would-be federal litigant voluntarily filed the state court action in state court, and (2) the would-be federal court litigant could have raised his federal law issues in the state court complaint. *Migra,* 465 U.S. at 84–85, 104 S.Ct. 892 (finding that the federal court was precluded from hearing plaintiff's § 1983 claim). Moreover, a state court's decision upholding an administrative body's findings has preclusive effect in a subsequent federal suit if the state court had jurisdiction over those issues on appeal from the administrative action. *Lake Lucerne Civic Ass'n v. Dolphin Stadium Corp.,* 878 F.2d 1360, 1367 (11th Cir.1989) (zoning case) (citing *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)).

■ As to the first element, the parties in the previous cases are the same. Both Rachel's and Casselberry were involved in Rachel's Certiorari Petition and Rachel's Declaratory Judgment Action.[17] Also, the relief sought by Rachel's is the same. In the two actions before the Circuit Court, Rachel's sought an injunction prohibiting Casselberry from enforcing its ordinance, a decree declaring the ordinance unconstitutional, and a decree invalidating the revocation order. In the instant suit, Rachel's has requested this Court to enter an injunction prohibiting Casselberry from enforcing its ordinance and a decree declaring the ordinance unconstitutional. Therefore, the identity of the relief sought is the same here and at the state court level.

■ Moreover, there has been a final adjudication on the merits in both cases. In the Declaratory Judgment Action, the Circuit Court granted summary judgment for Casselberry and denied Rachel's request for a permanent injunction.[18] In Rachel's Certiorari Petition, the Circuit Court upheld the revocation of the license

---

**17.** It appears that Koziara's alleged claims were asserted along with Rachel's claims in an attempt to avoid the application of res judicata to Rachel's federal claims. In the Complaint, Koziara has requested the same relief as Rachel's requested and her claims seem to be derivative of those claims asserted by Rachel's. While the Court will address Koziara's motion for preliminary injunction in this Order, the Court will not address the merits of Koziara's claims.

**18.** The summary judgment granted by the Circuit Court is a final adjudication on the merits

and cannot be reviewed except by appeal. *See* Florida Rules of Appellate Procedure 9.030 and 9.110. Although the Fifth DCA reversed the Circuit Court's denial of the temporary injunction and proclaimed that Rachel's due process rights were violated during the revocation hearing, this is of no import in this Court's analysis. An order or opinion on a motion for a temporary injunction is not a final judgment on the merits of a case. *David Vincent, Inc. v. Broward County, Fla.,* 200 F.3d 1325, 1331–32 (11th Cir.2000) (citations omitted).

finding none of the alleged constitutional infirmities. The Fifth DCA, on second-tier certiorari review, upheld the decision of the Circuit Court.

 Despite making numerous arguments concerning the constitutional infirmities in the ordinance, the revocation hearing, and the revocation order, Rachel's has asserted that it could not raise its constitutional arguments in the Certiorari Petition and thus its federal suit is not barred by res judicata.[19] Certiorari is the proper method to review the quasi-judicial actions of a board of county commissioners; whereas injunctive and declaratory suits are the proper way to attack a board's legislative actions. *Hirt v. Polk County Bd. of County Comm'rs,* 578 So.2d 415, 416 (Fla. 2d DCA 1991) (citing *Sun Ray Homes, Inc. v. County of Dade,* 166 So.2d 827, 829 (Fla. 3d DCA 1964); *Town of Indialantic v. Nance,* 400 So.2d 37 (Fla. 5th DCA 1981), *approved,* 419 So.2d 1041 (Fla.1982)).

> Under Florida law, "[w]here a party is entitled as a matter of right to seek review in the circuit court from administrative action, the circuit court must determine whether [in the administrative proceeding] procedural due process is accorded, whether the essential requirements of the law have been observed, and whether the administrative findings and judgment are supported by competent substantial evidence. The district court, upon review of the circuit court's judgment, then determines whether the circuit court afforded procedural due process and applied the correct law." *City of Deerfield Beach v. Vaillant,* 419 So.2d 624, 626 (Fla.1982). *See also Norwood–Norland II Homeowners' Ass'n v. Dade County,* 511 So.2d 1009, 1012 (Fla. 3d DCA 1987). The purpose of such a

restricted scope of review is to guard against the substitution of the judgment of the courts for that of the administrative body in the exercise of the latter's powers, *see Metropolitan Dade County v. Brisker,* 485 So.2d 1349, 1351 (Fla. 3d DCA 1986); *Dade County v. Yumbo,* 348 So.2d 392, 394 (Fla. 3d DCA 1977), at least when the administrative action is not arbitrary or discriminatory, and when reasonable minds can differ as to the benefits of the administrative action. *Lake Lucerne,* 878 F.2d at 1369.

 Furthermore, three types of constitutional challenges may be raised in the context of the administrative decision-making process of an executive agency. *Key Haven Associated Enters., Inc. v. Board of Trs. of Internal Imp. Trust Fund,* 427 So.2d 153, 157 (Fla.1982). An affected party may seek to challenge: (1) the facial constitutionality of a statute or ordinance authorizing an agency action; (2) the facial constitutionality of an agency rule adopted to implement a constitutional provision, a statute or an ordinance, or (3) the unconstitutionality of the agency's action in implementing a constitutional statute, ordinance, or rule. *Id.; Vaillant,* 419 So.2d at 626 (a petition for certiorari is not the proper procedural vehicle to challenge the constitutionality of a zoning ordinance). The facial constitutionality of an ordinance must be determined in original proceedings before the circuit court, not by way of a petition for writ of certiorari. *First Baptist Church of Perrine v. Miami–Dade County,* 768 So.2d 1114, 1115 n. 1 (Fla. 3d DCA 2000) (citing *Nostimo, Inc. v. City of Clearwater,* 594 So.2d 779 (Fla. 2d DCA 1992)); *see also Key Haven,* 427 So.2d at 157 (citations omitted). Conversely, where an as-applied challenge to a rule or ordi-

---

**19.** As support, Rachel's cites a footnote in the Fifth DCA's opinion on its review of the Certiorari Petition. *See Seminole Entm't. Inc. v. City of Casselberry, Fla.,* 813 So.2d 186, 188 n. 1 (Fla. 5th DCA 2002), *pet. for cert. filed Apr. 30, 2002,* case no. SC02–1032.

nance is raised, courts have held that an individual must exhaust administrative remedies before proceeding to circuit court on a petition for writ of certiorari. *See Sarnoff v. Florida Dept. of Highway Safety and Motor Vehicles*, 825 So.2d 351, 354 (Fla.2002); *Kirby v. City of Archer*, 790 So.2d 1214, 1215 (Fla. 1st DCA 2001). *Cf. Holiday Isle Resort & Marina Assocs. v. Monroe County*, 582 So.2d 721, 721 (Fla. 3d DCA 1991) (granting a petition for writ of certiorari quashing the order of the circuit court dismissing the facial and as-applied attacks by the petitioner as to the constitutionality of the county ordinance).

 In the state court proceedings, the Circuit Court had jurisdiction to consider any attack by Rachel's, constitutional or otherwise, to the revocation hearing or the revocation order in the Certiorari Petition, as well as any as-applied attack on the ordinance.[20] However, any facial attack on the constitutionality of the ordinance should have been brought in the Declaratory Judgment Action. Also, a claim under 42 U.S.C. § 1983 may be brought in state court. *Crocker v. Pleasant*, 778 So.2d 978, 982 n. 6 (Fla.2001) (citing *Maine v. Thiboutot*, 448 U.S. 1, 10–11, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980)). Accordingly, the Circuit Court had jurisdiction to decide both actions brought by Rachel's, as well as the claims asserted in this suit. *See generally Sharpley*, 786 F.2d at 1111.

 Finally, this Court must decide whether the causes of action asserted in the Declaratory Judgment Action and the Certiorari Petition are the same as those asserted in this case. In determining whether the causes of action are the same, a court must determine whether the primary right and duty are the same in each case. In making this determination, the court should "compare the substance of the actions, not their form." *I.A. Durbin*, 793 F.2d at 1549. If the instant claims arise "out of the same nucleus of operative fact," or are "based on the same factual predicate" as the claims in state court suits, then the causes of action are the same for res judicata purposes. *Trustmark*, 299 F.3d 1265, 1269–70 (citing *Piper*, 244 F.3d at 1297); *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 (11th Cir. 1999); *Citibank, N.A.*, 904 F.2d at 1503; *see Albrecht*, 444 So.2d at 11–12 ("The determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions."). In making this determination courts should ask "whether the plaintiff could, or rather should, have brought the second claim with the first lawsuit." *Trustmark*, 299 F.3d 1265, 1270 (citing *Ragsdale*, 193 F.3d at 1239). "[W]hen a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which

---

**20.** In accordance with the principles cited in *Lake Lucerne*, the Circuit Court denied the Certiorari Petition and the Fifth DCA upheld the Circuit Court. Furthermore, having independently reviewed the record of the state court proceeding, the Court concludes that Rachel's was not deprived of due process, and therefore, cannot maintain its § 1983 suit. The record and transcript of the revocation hearing reveal that Rachel's received notice of the revocation, requested a hearing, was represented by counsel, cross-examined witnesses (albeit not as thoroughly as Rachel's

would have liked), and was given the opportunity to present evidence but chose not to. Thus, while the hearing was not a textbook example of a judicial proceeding, due process was nevertheless accorded to Rachel's, just as the state courts concluded. The procedures followed by the Casselberry City Commission, the Circuit Court, and the Fifth DCA at the state level provided all the due process that is constitutionally required. *Sharpley*, 786 F.2d at 1112 (citing *Kremer*, 456 U.S. at 483–85, 102 S.Ct. 1883).

was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Gjellum v. City of Birmingham, Ala.*, 829 F.2d 1056, 1059–60 (11th Cir.1987) (citing *Sea–Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 578–79, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (quotation omitted)).

The Court concludes that the claims in the § 1983 action before this Court are based on the same factual predicate and arise out of the same nucleus of operative facts as did the claims in Rachel's Certiorari Petition and Declaratory Judgment Action, to wit: the revocation hearing, the revocation order, and the Casselberry ordinance. Rachel's has used the same facts and same legal authorities to litigate all three suits.[21]

■■■■■ Although Rachel's had the option of litigating all or part of its claims in federal court, state court, or both, Rachel's must have articulated its intentions from the outset. *Sharpley*, 786 F.2d at 1112 & n. 2 (citing *Migra*, 465 U.S. at 85, 104 S.Ct. 892). A plaintiff is not "guarantee[d] ... a right to proceed to judgment in state court on [its] state claims and then turn to federal court for adjudication of [its] federal claims." *Migra*, 465 U.S. at 85, 104

S.Ct. 892. In order to preserve a litigant's right to a federal forum, a litigant should (1) first file in federal court; (2) seek a stay from the federal court to allow the state courts to consider any state law questions; and (3) inform the state court that he or she intends to pursue any federal constitutional claims in federal court following the conclusion of the state court proceedings. *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1304–05 (11th Cir.1992) (citing *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 415, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964)). Failure to do so, "eliminates the opportunity to present such federal claims in a federal forum." *Sharpley*, 786 F.2d at 1112, n. 2. "Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Ragsdale*, 193 F.3d at 1238. Moreover, a plaintiff cannot wait until it receives an unfavorable decision in state court and then adjudicate its claims in federal court. Florida law is clear that "[t]he rule against splitting causes of action makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action." *Department of Agric. and Consumer Serv. v. Mid–Florida Growers, Inc.*, 570 So.2d 892, 901 (Fla.1990). Accordingly, the doctrine of res judicata bars Rachel's claims and summary judgment is appropriate.[22]

21. In spite of Rachel's arguments that it was careful to avoid any attack on the constitutionality of the ordinance, Rachel's did, in fact, make facial attacks in both the Certiorari Petition and the Declaratory Judgment Action. In the Certiorari Petition, Rachel's attacked the revocation order, the revocation hearing, and the ordinance on constitutional grounds. Nevertheless, the Circuit Court considered and decided each one of Rachel's arguments. In the Declaratory Judgment Action, Rachel's made virtually identical arguments, as well as four additional constitutional arguments attacking the ordinance facially and as-applied. The Circuit Court concluded that the doctrine of res judicata applied to bar it from considering Rachel's claims in the Declaratory Judgment Action because it had

considered the same arguments and facts upon which the claims were based in the Certiorari Petition.

22. Alternatively, if res judicata did not bar Rachel's suit, as well as the preliminary and permanent injunctions Rachel's seeks, it is unlikely that Rachel's could succeed on the merits of its claims. Accordingly, a preliminary injunction would not be appropriate for the following reasons. First, revocation of Rachel's adult entertainment license was based upon criminal activity, not a prior restraint of First Amendment expression. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706–07, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986) ("Bookselling in an establishment used for prostitution does not confer First Amendment

## V. CONCLUSION

Based on the foregoing, it is therefore

**ORDERED** and **ADJUDGED** that:

1) Defendant's Motion for Summary Judgment (Doc. 11) as to Plaintiff Rachel's is **GRANTED**;

2) Plaintiff Rachel's Motion for Preliminary Injunction (Doc. 8) is **DENIED**; and

3) Plaintiff Koziara's Motion for Preliminary Injunction (Doc. 8) is DENIED because she cannot demonstrate irreparable harm.[23]

## APPENDIX A

### SEMINOLE ENTERTAINMENT v. CITY OF CASSELBERRY
### 6:02–CV–828–ORL–31KRS
### TIME LINE

| | |
|---|---|
| Jun. 7, 1999 | Ordinance passed by Casselberry providing for suspension and/or revocation of adult entertainment license if licensee (owner, operator, partner) knowingly allows sale or possession of controlled substances, prostitution, the performance of sex acts or simulated sex acts, as defined in the ordinance, to occur on the premises. |
| Jan. 29, 2000 | Police began undercover investigation of Rachel's |
| Jul. 2000 | Undercover investigation ended but investigation of owners (Seminole Entertainment, Inc., continued until December 27, 2000) |
| Aug. 29, 2000 | Rachel's applied for adult entertainment license renewal under new ordinance |
| Oct. 1, 2000 | Casselberry granted license |
| Nov. 14, 2000 | City Manager served Amended Notice of Revocation on Rachel's based upon violations of the new ordinance |
| Nov. 22, 2000 | Rachel's filed challenge to revocation |
| Dec. 14, 2000 | Hearing on revocation held (numerous witnesses testified to viewing actual acts of prostitution, sale of drugs, making undercover purchases of drugs, and viewing simulated sex acts and actual sex acts between workers and other workers for pay or workers and patrons for pay)— Various illegal acts done by or occurred within presence of doormen, managers, and workers whose names were listed on the adult entertainment application. Section 14–80 provides that the license shall be revoked when "any person listed on the application has knowingly allowed any specified sexual activities to occur on the premises ...." |
| Dec. 27, 2000 | Investigation of Seminole Entertainment, Inc. ended |
| Dec. 27, 2000 | Continuation of hearing on revocation |

coverage to defeat a valid statute aimed at penalizing and terminating illegal uses of premises. The legislature properly sought to protect the environment of the community by directing the sanction at premises knowingly used for lawless activities."). Although this case, like all cases, "imposes some conceivable burden on First Amendment protected activities," *id.*, Rachel's does not have a constitutional right to either conduct criminal activities or turn its back while its employees conduct criminal activities on its premises. Second, the Eleventh Circuit held in *Boss Capital* that prompt judicial review means prompt judicial access, not a prompt judicial decision. Third, the ordinance furthers Casselberry's interest in curbing illegal activities

in adult entertainment establishments and is the least-restrictive means to further these interests. Finally, it does not appear that any Fifth Amendment rights have been implicated by Casselberry's revocation of Rachel's license. Rachel's lost its license to operate an adult entertainment establishment for two years because it permitted prostitution, sales of controlled substances, and prohibited sexual activities to occur on its premises.

23. Koziara has not been precluded from dancing erotically in violation of her First Amendment rights; she remains free to do so in any licensed establishment. *Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334, 1338–39, 16 Fla. L. Weekly Fed. C44 (11th Cir.2002).

| | |
|---|---|
| Dec. 28, 2000 | Continuation of hearing on revocation, Attorney for Rachel's admits drug sales and prostitution on premises, argues that there is no evidence that owners (Seminole Entertainment) were aware of criminal conduct |
| Jan. 9, 2001 | Continuation of hearing/discussion on revocation |
| Jan. 31, 2001 | City entered findings of fact and conclusions of law finding by clear and convincing evidence (city only had to prove by preponderance) that the ordinance had been violated. Also found that pervasiveness of conduct meant that actual owners knew or should have known about manager, doormen, and worker conduct which violated criminal statutes and ordinance. |
| Feb. 1, 2001 | License revoked for two years |
| Feb. 1, 2001 | Rachel's filed complaint in circuit court for declaratory judgment and permanent injunction arguing constitutionality of the ordinance-case no. 01–CA–248–16–P |
| Feb. 2, 2001 | Rachel's filed motion for temporary injunction-case no. 01–CA–248–16–P |
| Mar. 2, 2001 | Rachel's filed petition for writ of certiorari with circuit court-case no. 01–23–AP. Rachel's argues that implicates freedom of expression under First Amendment, also violates Florida Constitution. |
| Mar. 7, 2001 | Rachel's filed motion to stay license revocation pending review on petition for writ of certiorari with circuit court-case no. 01–23–AP. Rachel's argued that case implicated First, Fifth, and Fourteenth Amendments. |
| Mar. 9, 2001 | Judge Nelson held hearing on temporary injunction-case no. 01–CA–248–16–P |
| Mar. 15, 2001 | Judge Nelson denied temporary injunction-case no. 01–CA–248–16–P |
| Mar. 16, 2001 | Rachel's filed appeal on temp. inj. with 5th District Court of Appeal-case no. 5D01–811 |
| Jul. 17, 2001 | Judge Nelson issued order/opinion denying Rachel's petition for writ of certiorari-case no. 01–23–AP (upheld decision of City to revoke license) |
| Aug. 3, 2001 | Rachel's filed appeal on denial of petition for writ of certiorari, which upheld license revocation, with 5th District Court of Appeal-case no. 5D01–2312. |
| Nov. 30, 2001 | Fifth DCA reversed denial of temporary injunction, case no. 5D01–811 pending opinion in case no. 5D01–2312. |
| Dec. 7, 2001 | Rachel's filed motion for rehearing/rehearing en banc in case no. 5D01–811. |
| Dec. 20, 2001 | Fifth DCA entered opinion on motion for clarification on temp. inj. in case no. 5D01–811 ordering circuit court to enter temporary injunction |
| Dec. 28, 2001 | Casselberry filed motion for rehearing/rehearing en banc/clarification in case no. 5D01–811. |
| Mar. 22, 2002 | Fifth DCA affirmed denial of petition for writ of certiorari in case no. 5D01–2312 and temp. injunction, which was treated as a stay, expired in case no. 5D01–811. |
| Mar. 25, 2002 | Rachel's filed motion for rehearing/rehearing en banc in case no. 5D01–2312. |
| Mar. 27, 2002 | Rachel's filed motion for clarification and addendum to motion for rehearing/rehearing en banc in case no. 5D01–2312. |
| Apr. 5, 2002 | Order by J. Nelson dissolving temporary injunction/stay (ordered by 5th DCA), denying Rachel's motion to stay, and confirming that Casselberry will take no action to enforce revocation until April 17, 2002. |
| Apr. 17, 2002 | 5th DCA entered mandate in case no. 5D01–811 and denied Rachel's filed motion for rehearing/rehearing en banc and Casselberry's motion for rehearing/rehearing en banc/clarification in case no. 5D01–811. Also, stated that order on motion for clarification on petition for writ of certiorari case no. 5D01–2312 was denied as moot. Dissolved temporary injunction entered in 5D01–811. |
| Apr. 19, 2002 | 5th DCA entered opinion in case no. 5D01–2312 denying Rachel's motion for rehearing/rehearing en banc/certify issues of great public importance/motion for clarification filed Mar. 25, 2002, Rachel's motion for |

clarification filed Mar. 27, 2002, Rachel's motion to stay lower court proceedings filed Apr. 10, 2002 (no mandate filed per order of 5th DCA)

| | |
|---|---|
| Apr. 30, 2002 | Rachel's sought review of Fifth DCA decision in case no. 5D01–2312 in the Florida Supreme Court-case no. SC02–1032. |
| May 25, 2002 | Florida Supreme Court denied motion for stay in case no. SC02–1032. |
| Jun. 27, 2002 | Rachel's filed motion for summary judgment on declaratory action and permanent injunction on grounds of res judicata and no constitutional violations in case no. 01–CA–248–16–P |
| Jul. 22, 2002 | Rachel's filed complaint for declaratory judgment and permanent injunction in the U.S. District Court under 42 U.S.C. § 1983 claiming that Casselberry has violated its rights under the First, Fifth, and Fourteenth Amendments-case no. 6:2002–CV–828–ORL–31KRS |
| Aug. 6, 2002 | Rachel's filed a motion for preliminary injunction-case no. 6:2002–CV–828–ORL–31KRS. |
| Aug. 8, 2002 | Casselberry filed cross-motion for summary judgment on declaratory action and permanent injunction in case no. 01–CA–248–16–P |
| Aug. 20, 2002 | Casselberry filed a motion to dismiss Rachel's complaint on the grounds of res judicata, which Court treated as motion for summary judgment-case no. 6:2002–CV–828–ORL–31KRS. |
| Sep. 27, 2002 | Hearing held on Casselberry's motion for summary judgment and Rachel's motion for preliminary injunction-case no. 6:2002–CV–828–ORL–31KRS. |
| Oct. 28, 2002 | Circuit Judge Nelson entered order granting summary judgment in favor of Casselberry on declaratory action and permanent injunction in case no. 01–CA–248–16–P concluding that claims were barred by res judicata. |
| Nov. 12, 2002 | Rachel's filed appeal on granting of summary judgment in favor of Casselberry on declaratory action and permanent injunction in case no. 01–CA–248–16–P with the 5th District Court of Appeal-case no. 5D02–3605. |

## APPENDIX B

### SEMINOLE ENTERTAINMENT v. CITY OF CASSELBERRY

### 6:02–CV–828–ORL–31KRS

**Sec. 14–92. Suspension and revocation of license.**

(c) *Revocation.* The City Manager or his designee shall revoke a license when he or his designee determines that any one (1) of the following has occurred.

(1) There has been one (1) or more violations that have occurred within a two (2) year period from the date the last violation occurrence date from which the conviction resulted in a One Hundred Eighty (180) day suspension pursuant to (c)(3), but not including any time during which the license was effectively suspended, and a conviction results from one (1) or more of the violations, the City Manager or his designee shall, upon the date of the latest conviction, provide notice to the licensee that the license shall be revoked unless good cause is shown in accordance with this Part that the violation has not occurred.

(2) The licensee or any person on its or his behalf or any person listed on the application pursuant to Section 14–80(b) of this Article, gave false or misleading information in the material submitted during the application process.

(3) The licensee or any person on its or his behalf or any person listed on

the application pursuant to Section 14–80(b) of this Article has knowingly allowed possession, use, or sale of controlled substances on the premises of the establishment or business or when with a customer.

(4) The licensee or any person on its or his behalf or any person listed on the application pursuant to Section 14–80(b) of this Article has knowingly allowed prostitution on the premises of the establishment or business or when with a customer.

(5) The licensee or any person on its or his behalf or any person listed on the application pursuant to Section 14–80(b) of this Article knowingly operated the adult entertainment establishment or sexually oriented business during a period when the licensee's license was suspended.

(6) Except in the case of an adult motel, the licensee or any person on its or his behalf or any person listed on the application pursuant to Section 14–80 of this Article has knowingly allowed any specified sexual activities to occur on the premises of the establishment or business.

(d) *Effective dates of suspensions and revocations.* Except as otherwise provided in this Article, all periods of suspension and revocation shall become effective 15 days after the City Manager or his designee posts the notice of suspension or revocation at the licensee's establishment, or on the date that the licensee turns in his, her or its license, whichever happens first. The suspension or revocation shall be abated in the event that the licensee files a timely challenge to the suspension or revocation in accordance with the procedures set forth in this Article or upon order of a court of competent jurisdiction. If an adult entertain-

ment establishment or sexually oriented business license is revoked, the licensee shall not be issued another adult entertainment establishment or sexually oriented business license for a period of two years running from the date the revocation actually takes effect after all abatement periods have lapsed.

(e) *Other remedies.* Notwithstanding the provisions of this Section, the City may pursue any and all other available remedies through any and all other available processes and procedures available to correct violations of City codes. Included within such remedies are the enforcement actions set forth in this Article, actions in a court of competent jurisdiction for injunctive or other appropriate relief, criminal prosecution, code enforcement proceedings, the issuance of citations, the suspension or revocation of permits relating to health or safety matters, and any and all other remedies available under the laws of the State of Florida and the United States.

(Ord. No. 99–934, § I, 6–7–99)

**Sec. 14–93. Suspension and revocation proceedings.**

(a) *Challenge to suspension or revocation.* If the City Manager or his designee notifies a licensee in writing of the pending suspension or revocation of a license as provided in Section 14–92 of this Article, then the suspension or revocation shall become final and effective fifteen (15) days after mailing to the licensee's record address, posting at the licensed establishment, or actual delivery of the notice to the licensee, unless the licensee first files with the City Manager or his designee a written response stating the reasons why the suspension or revocation is alleged to be in

error or inappropriate and a written notice of intent to challenge the suspension or revocation requesting a hearing to determine whether the suspension or revocation will become effective. The suspension or revocation shall be abated in the event that a licensee files a timely challenge to the suspension or revocation in accordance with the procedures of this Article or upon an order of a court of competent jurisdiction. A suspension or revocation already in effect, but not previously challenged in a suspension or revocation hearing, may be challenged in the same manner but is not abated during the proceedings.

(b) *Hearing on suspension or revocation.* When a licensee files a written response and notice of intent to challenge a pending or existing suspension or revocation then a public hearing to determine if the pending suspension or revocation will become effective and final shall be held by the City Commission. The City Manager or his designee shall notify the City Attorney and any appropriate City offices who shall schedule and provide notice of the hearing date and time.

(1) The suspension or revocation hearing shall be held within thirty (30) days of the City Manager's receipt of a written challenge and request for a hearing by the aggrieved licensee.

(2) The participants before the City Commission shall be the licensee, any witnesses of the licensee, the City Manager or his designee and any witnesses of the City Manager or his designee. All witnesses shall provide their legal name, mailing addresses and telephone number.

(3) The procedures used shall be those typically used in a civil case with the City Manager or his desig-

nee having the burden of proof by preponderance of the evidence.

(4) Testimony and evidence may be submitted by any witness but shall be limited to matters directly relating to the grounds for suspension or revocation. Irrelevant, immaterial, or unduly repetitious testimony or evidence shall be excluded.

(5) All testimony shall be under oath. The City Commission shall decide all questions of procedure and standing. Unless otherwise mutually agreed to between the licensee and the City Manager or his designee, the order of presentation of testimony and evidence shall be as follows:

a. The City Manager or his designee and any witnesses of the City Manager or his designee.

b. The licensee and any witnesses of the licensee.

c. Rebuttal witnesses from the City Manager or his designee.

d. Rebuttal witnesses from the licensee.

e. Summation by the City Manager or his designee.

f. Summation by the licensee.

(6) The City Commission may also call and question witnesses or request additional evidence as the City Commission deems necessary and appropriate.

(7) To the maximum extent practicable, the hearing shall be informal. Reasonable cross examination of witnesses shall be permitted, but questioning shall be confined as closely as possible to the scope of direct testimony.

(8) If the City Commission comes to believe that any facts, claims, or allegations necessitate additional re-

 

view or response by either the licensee or the City Manager or his designee, then the City Commission may order the hearing continued until an announced date certain, not to exceed thirty (30) days from the date of continuance. The City Commission shall render a final decision on the appeal within sixty (60) days of the City Manager's receipt of licensee's written notice of challenge.

(9) The City Commission shall render a written decision determining whether the suspension or revocation will become or remain effective at the conclusion of the hearing at which the appeal is decided or as soon as practicable thereafter.

(c) *Filing of decision.* The original of the written decision of the City Commission shall be filed with the City Clerk and copies shall be delivered or mailed to the licensee, the City manager or his designee and the City Police Department.

(d) *Judicial Review.* Any person who participated in a suspension or revocation hearing before the City Commission and who is aggrieved by the decision of the City Commission may immediately challenge the decision in any court of competent jurisdiction pursuant to the Rules of Procedure of that court. The record of the hearing shall consist of the complete record of the proceedings before the City Commission. The City Commission's decision shall be promptly reviewed by the court.

(e) *Requirement of exhaustion procedures.* Judicial review of a suspension or revocation, or related hearing or appeal proceedings, shall be available only after the administrative procedures and remedies set forth in this Section have been exhausted.

(f) *Notice of final suspension or revocation.* If no response or request for a suspension or revocation hearing is filed within 15 days of the notice of a pending suspension or revocation, or if the licensee who requested the hearing does not appear at the suspension or revocation hearing after notice, or if the City Commission decides after a hearing that a pending suspension or revocation will become final, then the City Manager or his designee shall issue to the licensee notice of final suspension or revocation of the adult entertainment license and mail or arrange delivery of the notice to the licensee's record address.

(g) *Effective date of suspension or revocation.* The suspension or revocation of a license shall take effect the day after deliver of a notice of final suspension or revocation to the licensee in person, by posting on the licensed establishment, or by mail to the licensee's record address, or on the date the licensee surrenders the license, whichever happens first. The licensees shall immediately return and surrender a revoked license to the City Manager or his designee or surrender the revoked license, upon demand, to a member of the Police Department.

(Ord. No. 99–934, § I, 6–7–99)