MODERN, INC., and First Omni Service Corp., Plaintiffs,

v.

State of FLORIDA, DEPARTMENT OF TRANSPORTATION, St. Johns River Water Management District, and United States Fish & Wildlife Service, Defendants.

No. 6:03CV–718–ORL–31DAB.

United States District Court, M.D. Florida, Orlando Division.

April 14, 2004.

F.2d at 1218 n. 2.

Allan Paxton Whitehead, Frese, Nash & Hansen, P.A., Melbourne, FL, David Smolker, Matthew C. Lucas, Bricklemyer, Smolker & Bolves, P.A., Tampa, FL, for Plaintiffs.

Walter Kelly, Fla. Dept. of Transportation, Tallahassee, FL, Stanley J. Niego, William H. Congdon, Palatka, FL, Samuel D. Armstrong, Office of the U.S. Attorney, Orlando, FL, for Defendants.

## ORDER

PRESNELL, District Judge.

This cause comes before the Court for consideration on the following:

1) the United States Fish and Wildlife Service's ("USFWS") Motion to Dismiss (Doc. 46), and Plaintiffs' Response in Opposition thereto (Doc. 56);

2) St. Johns River Water Management District's ("St.Johns") Motion to Dismiss (Doc. 47) and Memorandum of Law in Support thereof (Doc. 50);

3) State of Florida, Department of Transportation's ("FDOT") Motion to Dismiss (Doc. 51)[1] and Memorandum of Law in Support thereof (Doc. 52);

---

1. FDOT adopted and incorporated by refer- ence St. Johns' Motion to Dismiss and Memo-

4) Plaintiffs' Response in Opposition to St. Johns' and FDOT's Motions to Dismiss (Doc. 57);

5) Attachments filed jointly (Doc. 61); and

6) Plaintiffs' Statement of Scope of Issues Relating to the Hacienda Road Mitigation Project (Doc. 64).

The Court heard oral argument on December 19, 2003 (Doc. 65),[2] following which St. Johns filed a Reply Memorandum (Doc. 67), and Plaintiffs filed a Surreply (Doc. 69).

## I. Background

The following facts are gleaned from the Plaintiffs' Third Amended Complaint as well as the administrative and state proceedings' records.

Plaintiffs Modern and Omni own tracts of land ("the Properties") in North Brevard County near the intersection of I–95 and State Road 50. (*See* Doc. 45, Exs. A–E). The Properties originally were part of an area of land platted in 1911 called the Titusville Fruit and Farm Lands Company Subdivision. (*See* Doc. 45, Ex. F).[3] The land—including Plaintiffs' Properties—was traditionally dry and thus suitable for commercial use and development. Plaintiffs allegedly enjoy express and common law easement rights in certain drainage canals and ditches adjacent to their Properties. Allegedly, these drainage easements are necessary to drain the Properties for continued use as drylands.

In the 1970s, in an effort to protect the now-extinct dusky seaside sparrow, USFWS took title to the St. Johns National Wildlife Refuge ("the Refuge").[4] Plaintiffs, allege, however, that USFWS took title to the Refuge subject to existing rights of way and the drainage easements.

In the late 1980s, St. Johns permitted FDOT to fill several miles of drainage canals located in and adjacent to the Refuge's rights of way. FDOT filled these drainage canals to create wetlands in mitigation of the effects of the widening of State Road 50. Plaintiffs allege that neither FDOT nor St. Johns gave them notice prior to filling the drainage canals and that St. Johns failed to consider adequately the offsite effects of this mitigation project, known as the Hacienda Road Project.

Over the years, the capacity of the land to hold water decreased. In the mid–1990s, the Properties allegedly began to suffer from flooding due to increased water levels, rendering certain portions of the Properties unusable and/or diminished in use and value. Thinking that the Hacienda Road Project caused the flooding, Plaintiffs notified St. Johns and FDOT of its intent to file suit for restoration of its drainage easements. An agreement allegedly was reached between private property owners (including Plaintiffs), Brevard County, USFWS, St. Johns, and FDOT, under which *inter alia* Brevard County would clean out a portion of the drainage canal system. In addition, in January 1997, claiming to do "maintenance" work, Modern excavated two ditches on wetlands that allegedly had, in the past, drained the Properties. Modern did not have a permit for this work. Part of the excavation site was on Refuge land and included portions of the Hacienda Road Project. The site is entirely within St. Johns' jurisdiction.

In March 1997, USFWS complained to St. Johns that Modern's excavation was

---

randum of Law. (*See* Doc. 52 at 2).

**2.** A transcript of the hearing was filed at Document 65.

**3.** A blown-up copy of the Plat was filed as Exhibit B to Document 58, the Affidavit of Robert Sprinkle.

**4.** The Refuge continues to be an important habitat for fish and wildlife.

adversely impacting the Refuge's fish and wildlife by draining wetlands. St. Johns investigated the matter, and on May 14, 1997, held a meeting at which it agreed to issue an Emergency Order directing all drainage canal work to cease and ordering blockage of the system to recreate the wetlands. Plaintiffs allege that this meeting was held without notice to them or any other adjacent property owner. St. Johns issued an Emergency Order authorizing installation by USFWS of two earthen weirs within the Refuge's drainage canal system to return the water elevations to their pre-excavation levels and thus prevent further drainage. (*See* Doc. 50, Attach. B).

On May 29, 1997, Plaintiffs filed petitions for review of the Emergency Order pursuant to Florida Administrative Procedure Act Chapter 120. (Doc. 50, Attach.C). Plaintiffs sought rescission of the Emergency Order, corrective action, and allowance for continued "maintenance" work.

Thereafter, on August 20, 1997, St. Johns filed an administrative complaint and proposed order against Plaintiffs which, if granted, would have required Modern to undo all work on the system and to maintain permanent water levels exceeding a certain elevation. (Doc. 50, Attach.D). A few weeks later, on September 3, 1997, Plaintiffs filed a petition for a formal administrative hearing. (Doc. 50, Attach.E). All of these matters were consolidated into one administrative proceeding in October 1997.

Meanwhile, in May 1997, Plaintiffs filed suit in the Eighteenth Judicial Circuit Court for Brevard County, seeking both an injunction to reopen the drainage ditches and compensation for interference with their drainage easement rights.[5] On January 9, 1998, however, the Circuit Court dismissed Plaintiffs' complaint for failure to exhaust administrative remedies and for failure to join USFWS as an indispensable party. (Doc. 50, Attach.F). The Circuit Court also ordered that the suit be held in abeyance pending the administrative outcome. (Doc. 69, Ex. A).[6]

The administrative proceedings thus went forward.[7] The Administrative Law Judge ("ALJ") heard the consolidated cases in June 1998, and on June 15, 1999, issued a thorough and extensive Recommended Order[8] (Doc. 50, Attach.I) essen-

---

**5.** The Court does not have on file the original complaint filed in Circuit Court. However, the administrative record reflects that Plaintiffs had alleged in their Circuit Court complaint "that flooding from the Hacienda Road Project had resulted in an inverse condemnation of [their] property." (Doc. 50, Attach. I at 5). *(See also* Final Order, Doc. 50, Attach. K at 4).

**6.** The parties stipulated that holding the matter in abeyance was appropriate. (*See* Doc. 69, Ex. A at ¶ 3).

**7.** In March 1998, FDOT intervened in the administrative proceedings. Also consolidated with the administrative proceedings were two petitions filed by Plaintiffs seeking administrative determination of whether certain agency rules and policy statements were valid.

**8.** The administrative process pursuant to Chapter 120 is essentially intended to formulate agency action. To do so, the ALJ conducts a hearing and issues a recommended order to the agency. The agency then considers the parties' exceptions to the order and issues a final order. Generally, a hearing officer in a Chapter 120 proceeding lacks jurisdiction to consider constitutional issues. *Gulf Pines Mem. Park, Inc. v. Oaklawn Mem. Park, Inc.,* 361 So.2d 695, 699 (Fla.1978); *but see Key Haven Associated Enter., Inc. v. Board of Trustees of the Internal Improvement Trust Fund,* 427 So.2d 153, 158 (Fla.1982) (litigant must include equal protection and due process issues related to application of agency action in appeal to district court).

tially ruling on three main issues: 1) whether the issuance and underpinnings of the Emergency Order were valid; 2) whether Plaintiffs fell within one of three "maintenance" exemptions to the rule requiring a permit for the excavation; and 3) whether St. Johns' use of an agency statement to interpret the term "maintenance" constituted an invalid unadopted rule. Only the first two issues are relevant herein.

In his Recommended Order, the ALJ found that the Titusville Subdivision Plat established a drainage system of intersecting canals. (*Id.* at ¶ 17). The ALJ also found that Modern's excavation caused an emergency (*id.* at ¶ 105) and that there was evidence to support issuance of the Emergency Order as well as its legal and factual underpinnings. (*Id.* at ¶¶ 374–377). Further, the ALJ found that a permit was required for the excavation and that Plaintiffs had failed to obtain this permit. (*Id.* at ¶ 94). Plaintiffs argued that St. Johns was estopped from enforcing permit requirements against them, but the ALJ found that St. Johns did not make any misrepresentations of material fact on which Plaintiffs could have relied to their detriment. (*Id.* at ¶¶ 204–212, 399–402). The ALJ also found as a matter of fact that Plaintiffs were not treated disparately from others with regard to the permit rule. (*Id.* at ¶¶ 213–237).

During the proceedings, St. Johns and FDOT filed a Motion for Protective Order and Motion in Limine seeking to preclude Plaintiffs from discovering and introducing evidence of the Hacienda Road Project and its impact on the contested area. Defendants argued that the administrative body could not determine the nature or extent of easement rights or any other real property issue. Plaintiffs counterargued that

such evidence was essential to their ability to exhaust their administrative remedies. The ALJ ultimately denied the Motion in Limine and allowed Plaintiffs to discover and introduce evidence regarding the Hacienda Road Project and its role in alleged flooding problems on their Properties. Ultimately, the ALJ found that the Hacienda Road Project did not decrease floodplain storage capacity and did not cause water to flood Plaintiffs' Properties. (*Id.* at ¶¶ 76, 77, 86).

To determine whether Plaintiffs' activities fell within the exemptions to the permit rule, Plaintiffs presented the evidence regarding their alleged easements within the drainage system. The ALJ again found that, even assuming *arguendo* that Plaintiffs had drainage easements, they still were not exempt from statutory permit requirements (*id.* at ¶ 263) and they had not met the requirements for the exemptions. (*Id.* at ¶¶ 419–420). Moreover, the ALJ held that St. Johns' and FDOT's regulations did not impair their use of and rights in those easements.[9] (*Id.* at ¶¶ 404, 407). In making this decision, the ALJ expressly said he lacked jurisdiction to decide the "existence, nature, and extent of the property rights .... Jurisdiction over such matters lies in the circuit court." (*Id.* at ¶ 403 (citations omitted); *accord id.* at ¶ 423).

With regard to the weirs, the ALJ determined that they were reasonably necessary to protect Refuge life and uses (*id.* at ¶ 135) and that "Neither of the weirs caused flooding or other adverse impacts on nearby property." (*Id.* at ¶ 138). Rather, the ALJ found that the weirs had the same effect on water levels as the high elevation areas had on the Properties pre-excavation. (*Id.*).

---

9. At the oral argument before this Court, Defendants also assumed *arguendo* that Plaintiffs have drainage easements and agreed that the

ALJ lacked authority to determine whether Plaintiffs have easements. (Doc. 65 at 13).

Following issuance of the Recommended Order, St. Johns' Governing Board issued its Final Order (Doc. 50, Attach. K), adopting the majority of the ALJ's Recommended Order and concluding in relevant part that the Emergency Order was properly issued and the proposed agency action should be upheld.[10]

Plaintiffs appealed the Final Order to the First District Court of Appeal for the State of Florida. (Doc. 50, Attach.L). In relevant part, Plaintiffs argued that portions of the Recommended Order adopted by the Final Order improperly adjudicated property rights that should have been determined by a circuit court. (*Id.* at 33–37). They further argued that they were entitled to a declaratory judgment from a court of competent jurisdiction as to the extent of their easements and attendant entitlements. (*Id.* at 39–40).

In response, St. Johns and FDOT argued that the District Court of Appeal should not determine whether Plaintiffs have easement rights. (Doc. 57, Ex. D at 6–7, 33–36). The First District Court of Appeal affirmed the Final Order but without addressing the real property issues. *See St. Johns River Water Mgmt. Dist. v. Modern, Inc.,* 784 So.2d 464 (Fla. 1st DCA 2001).

Following the administrative proceedings, Plaintiffs filed an amended complaint in Circuit Court, which the Circuit Court dismissed because USFWS was an indispensable party. (Doc. 50, Attach.N). Plaintiffs thus served USFWS, and USFWS then removed the case to this Court.

Plaintiffs thereafter filed in this Court a Second Amended Complaint and a Third Amended Complaint. (Doc. 45). The Third Amended Complaint alleges 12 Counts as follows: (I) Inverse Condemnation of Express Easements against St. Johns; (II) Inverse Condemnation of Express Easements against FDOT; (III) Inverse Condemnation of Real Property against St. Johns; (IV) Inverse Condemnation of Real Property against FDOT; (V) Denial of Equal Protection under the U.S. and Florida Constitutions against St. Johns; (VI) Denial of Substantive Due Process Under the U.S. and Florida Constitutions; (VII) Denial of Procedural Due Process under the U.S. and Florida Constitutions; (VIII) Declaratory Relief; (IX) Trespass; (X) Nuisance; (XI) Permanent Injunctive Relief; and (XII) Estoppel.[11]

Defendants now separately move to dismiss Plaintiffs' Third Amended Complaint on various grounds addressed below. St. Johns and FDOT also move for summary judgment on Count VIII.

## II. Standards of Review

### A. Motion to Dismiss

In ruling on a motion to dismiss, a trial court must view the complaint in the light most favorable to the plaintiff, *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed.R.Civ.P. 10(c). *GSW, Inc. v. Long County, Ga.,* 999 F.2d 1508, 1510 (11th Cir.1993). The Court will take the Complaint's allegations as admitted by Defendant and liberally will con-

---

**10.** The Final Order struck the ALJ's finding that the Titusville Subdivision Plat established a drainage system of intersecting canals. (Doc. 50, Attach. K at 14).

**11.** It is not clear from the face of the Third Amended Complaint against whom Counts VI—XII are alleged. The Court therefore assumes, for purposes of this Order, that they

are alleged against all Defendants. For this reason, in sections addressing Counts I–V, "Defendants" will be used to refer to St. Johns and FDOT only. Sections addressing Counts VI–XII, which are not alleged against any specific Defendant, will use "Defendants" to refer to all three Defendants, unless otherwise noted.

strue them in Plaintiff's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The Court will not dismiss the Complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## B. Summary Judgment

A party is entitled to judgment as a matter of law when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Id.* at 323, 106 S.Ct. 2548. In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the record presents factual issues, the court must not decide them, but rather, must deny the motion and proceed to trial. *Environmen-*

*tal Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).[12]

## III. Analysis

### A. Counts I—IV: Inverse Condemnation

#### 1. Res Judicata

Defendants St. Johns and FDOT assert that Plaintiffs elected to pursue their inverse condemnation (or state takings) claims in the administrative proceedings below and therefore are subject to *res judicata.* Specifically, Defendants assert that Plaintiffs lost on the facts with regard to whether the Hacienda Road Project and weir construction caused flooding in the contested area and that, if Plaintiffs wanted to appeal these findings and seek a determination of whether a taking had occurred, they should have done so in the District Court of Appeal. Plaintiffs counter that, as a matter of law, they could not bring their inverse condemnation claims before the District Court of Appeal.

Neither party is entirely correct. The state of the law with respect to inverse condemnation claims and adjudication of the propriety of agency actions stems from *Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund,* 427 So.2d 153 (Fla. 1982), and its progeny. It is most easily summarized as follows:

■ 1) If a property owner concedes the propriety of an agency action, the owner may proceed directly to circuit court to pursue an inverse condemnation claim. *Id.* at 156.[13]

---

12. All decisions of the Fifth Circuit prior to October 1, 1981, are binding precedent on this Court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

13. As the Court pointed out in oral argument, *Key Haven* is not as broad as Defendants would have it be. Its essential holding is that, if the litigant wishes to challenge the propri-

ety of an agency action on constitutional grounds, a litigant must do so on direct appeal to the state district court. 427 So.2d at 158. *Key Haven* further held that, in that case, the plaintiff could have filed an inverse condemnation action in circuit court *after* exhausting all executive branch appeals because the claim was not a "veiled attempt to collaterally attack the propriety of agency action."

2) If a property owner contests the propriety of an agency action but has made an adequate record on the takings issue before the ALJ, the party may appeal the propriety of the agency action and seek adjudication of its takings claim before the district court of appeal.[14] *See Lee County v. New Testament Baptist Church of Fort Myers, Fla.*, 507 So.2d 626, 627–28 (Fla. 2d DCA 1987); *see also Key Haven*, 427 So.2d at 159 ("The claim of the taking of property *can be* raised in this direct review proceeding, and, *if an adequate record is available*, the district court could require the state to institute condemnation proceedings.") (emphasis added) (citations omitted).[15] In this scenario, the ALJ would find the facts, and if raised on appeal, the district court would decide whether a taking had occurred based on the existing record after determining whether the agency action was proper.[16] *Key Ha-*

---

*Id.* at 159. The Florida Supreme Court wrote:

> once an applicant has appealed the denial of a permit through all review procedures available in the executive branch, the applicant may choose either to contest the validity of the agency action by petitioning for review in a district court, or, by accepting the agency action as completely correct, to seek a circuit court determination of whether that correct agency action constituted a total taking of a person's property without just compensation.

*Id.* at 156.

**14.** A litigant is not *required* to bring its takings claim as part of an appeal to the district court. In *Albrecht v. State*, 444 So.2d 8 (Fla. 1984), a case decided subsequent to *Key Haven*, the circuit court had entered judgment on the pleadings against plaintiff's claim for inverse condemnation based on *res judicata*, and the appellate court had affirmed. *Id.* at 10. The Florida Supreme Court disagreed with the circuit and appellate courts, writing that the appellate court improperly presumed that because a (now abrogated) statute *allowed* an inverse condemnation to be brought before the district court of appeal as part of the appellate review of the agency action, that the inverse condemnation claim *had* to be brought before the district court of appeal. *Id.* at 11. "It is too broad a leap to take the words of a statute which provide for remand *if* the action is found to be in violation of the constitution and interpret them to mean that any constitutional issue *must* be raised there or be forever barred." *Id.* The *Albrecht* court noted that its decision did not conflict with *Key Haven:*

> In *Key Haven* we merely provided an alternative to direct review for those parties who wish to accept the propriety of the action. This was not meant to extinguish the property owner's right to bring the separate claim of inverse condemnation in circuit court at the conclusion of all judicial as well as executive branch appeals regarding propriety of the action. Whether the party agrees to the propriety or it is judicially determined is irrelevant. In either case the matter is closed and a claim of inverse condemnation comes into being. . . . once a party agrees to the propriety of the action and chooses the circuit court forum, it is estopped from any further denial that the action itself was proper. . . . This is not to say that once a party chooses to litigate the propriety of the action through the district court that it is estopped from bringing a claim of inverse condemnation in circuit court.

*Id.* at 12–13 (internal citations omitted).

*Albrecht* and *Key Haven* were abrogated by statute, as explained in *Bowen v. Florida Department of Environmental Regulation*, 448 So.2d 566 (Fla. 2d DCA 1984). *Bowen* held that Florida Statute § 253.763(2), which allows for an inverse condemnation claim in circuit court, "now provides for proceeding directly to the circuit court on an inverse condemnation action following final agency action denying, on its merits, a permit application." *Id.* at 568.

**15.** In *Lee County*, the appellant argued that "*Key Haven* stands for the proposition that an inverse condemnation claim and an appeal from agency action based on the unconstitutionality of the relevant statute or rule cannot be brought in the same action." *Id.* at 627–28. The court disagreed, holding instead that *Key Haven* allowed the district court of appeal to adjudicate a takings claim on review of the agency action *if an adequate record was available. Id.* at 628.

**16.** This is so because the propriety of an agency action must be determined finally before a

*ven,* 427 So.2d at 159.

■ 3) If a property owner contests the propriety of an agency action, the owner may seek review of the agency action in the district court of appeal and *then* file an inverse condemnation claim in the circuit court. *Albrecht,* 444 So.2d at 12–13. The property owner may not, however, simultaneously pursue an appeal of the agency action before the district court and a takings action in the circuit court. *Janson v. City of St. Augustine,* 468 So.2d 329, 330 (Fla. 5th DCA 1985).[17] *See also Bowen v. Florida Dep't of Envtl. Reg.,* 448 So.2d 566, 570 (Fla. 2d DCA 1984) (expressing in *dicta* that if an administrative appeal has been instituted, a circuit court could not hear the takings issue until the administrative proceedings were complete).

■ In the instant case, Plaintiffs did not accept the agency action as proper but instead elected to seek review of the propriety of the agency action in the District Court of Appeal. Plaintiffs also had on file a separate lawsuit in Circuit Court, alleging inverse condemnation. Because the Circuit Court had held the takings suit in

abeyance pending the administrative outcome, Plaintiffs were forbidden from simultaneously pursuing their takings claim in the district court of appeal. *Janson,* 468 So.2d at 330.

Defendants insist, however, that despite the abeyance, Plaintiffs raised the takings issue in the administrative proceeding and made an adequate record such that Plaintiffs are precluded from raising the issue before this Court. There is no dispute that Plaintiffs alleged in their administrative pleadings that Defendants' conduct effected a taking. There also is no dispute that the ALJ found that neither the Hacienda Road Project nor the weir construction caused flooding in the contested area. Nonetheless, just because something was plead and limited fact findings made at the administrative level does not necessarily mean an issue was litigated for purposes of *res judicata.* The Court finds that the administrative proceedings below did not fully and fairly explore the inverse condemnation claim and all its attendant issues and hence the record was not adequate with regard to whether a taking occurred.[18] Findings regarding the Hacienda Road Project, weir construction,

---

takings claim comes into being. *Albrecht,* 444 So.2d at 13.

17. In *Janson,* the plaintiff attempted to appeal the propriety of the agency action while simultaneously pursuing its inverse condemnation claim in circuit court. The court held:

> *Key Haven* and *Albrecht* dictate that the two remedies of appeal and inverse condemnation cannot be *simultaneously* pursued. Although a challenge to the administrative decision via appeal does not extinguish a suit for inverse condemnation at the conclusion of the appeal, *Albrecht,* a filing of an inverse condemnation suit forecloses a party from challenging the correctness of an administrative decision. *Key Haven.*

468 So.2d at 330. *See also Lee County,* 507 So.2d at 628 (describing the *Janson* situation as where a party improperly attempted to appeal the propriety of the agency action while simultaneously, *but in a separate lawsuit,* brought an inverse condemnation claim).

18. At the administrative proceedings, Plaintiffs indisputably sought to introduce evidence related to the Hacienda Road Project and its impact on the contested area. Plaintiffs indicated that this evidence went to the heart of their claim of whether they were exempt from certain permit requirements. This position is not entirely inconsistent with the position Plaintiffs now take, for Plaintiffs did not affirmatively argue that the *takings issue* should be adjudicated at the administrative level. Rather, Plaintiffs urged the ALJ to consider "the issue of whether or not we have easement rights and what those easement rights entitle us to do, and the impact of [St. Johns'] action on those easement rights." (Doc. 57, Ex. B at 65). In other words, Plaintiffs contended that their easement rights obviated the need to obtain a permit. (*Id.* at 69–70).

Defendants do not dispute that the ALJ lacked authority to determine whether Plaintiffs had easements. (Doc. 65 at 13). But, unlike Plaintiffs, Defendants do take a posi-

and flooding related thereto were not made in the context of inverse condemnation but rather only to set the stage for the ALJ's determination regarding the propriety of the Emergency Order and any potential exemptions to the permit rule.

Moreover, as noted in *Atlantic International Investment Corporation v. State*, 478 So.2d 805 (Fla.1985) (*per curiam*)—a case almost on all fours with the instant matter—the property owner was not barred "from bringing a taking claim in circuit court when that taking issue has not been addressed or resolved *in the district court.*" *Id.* at 808 (emphasis added). In the instant case, as Defendants recognize, Plaintiffs did not pursue the takings claim before *the district court* on appeal.[19]

tion inconsistent from the position espoused at the administrative proceedings. While arguing their Motion in Limine, for example, St Johns said:

> There are issues to adjudicate here Administratively that don't deal with the taking issue, involving whether or not the activity that is alleged required a permit or not, whether one was received or not, and those are purely Administrative issues that are within the scope [for] . . . Your Honor to consider. . . . it's not a defense to assert that they may or may not have some private property right to drain over someone else's lands. It's simply immaterial in any event.

(Doc. 57, Ex. B at 68). Similarly, FDOT said:

> Your Honor, we have an inverse case that's ongoing in Circuit Court in Brevard County. Now, in that inverse case, the Petitioners want to assert that the Agency's action is inappropriate. . . . The proper place to litigate that is in an Administrative context. What they want to do is they want to sidestep the Administrative process and step into Circuit Court, assert that the Agency action is wrong and get the Court to determine that a taking has occurred. Now, they can't do that. That was part of the issues raised by us in the Circuit Court. So, we're saying they are challenging the Agency action and it's appropriate. Under the case law, they must first exhaust their administrative remedies. . . . [they must] Administratively challenge that action and have a determination of whether the action was correct or incorrect and then proceed forward with that at that time. That's the appropriate time to proceed on the Circuit Court, whether when that appropriate agency action then constitutes a taking.

(*Id.* at 62–64). FDOT also said "A 120.57 proceeding is designed to challenge Agency action. It is not designed to determine whether someone does or does not have rights to some interest in land." (*Id.* at 71–72). And later FDOT argued:

[Plaintiffs] went into Circuit Court and they asked the Circuit Court to decide all these things and he said, no, this is not the place. [They had] to challenge Agency action Administratively first. And then, based on that decision, based on whether it was correct or not, then we go to decide the taking or whether a temporary injunction should be issued or not.

(*Id.* at 73). (To whom FDOT was referring by saying "we" is unclear.) Ultimately, the ALJ allowed in the evidence but only to determine limited permit exemption issues, not to adjudicate property rights or a takings claim, both of which an agency may not adjudicate in any event. "Inverse condemnation actions cannot be adjudicated by administrative boards or agencies." *Bowen*, 448 So.2d at 568; *see also Buckley v. Dep't of Health and Rehab. Services*, 516 So.2d 1008, 1009 (Fla. 1st DCA 1987) (administrative hearing improper forum to determine property issues).

19. There is no dispute that Plaintiffs did not pursue the takings issue on appeal. "Having taken the parties' and the ALJ's time to pursue these matters, and having had findings of fact regarding their contentions made against them, plaintiffs could not then abandon their taking claim and reserve it for another day by declining to pursue it further in the appellate part of the administrative process." (Doc. 50 at 17) (citations omitted). Defendants stated at oral argument:

> They pursued the taking claim [before the ALJ]. They lost on the facts. Had they wanted to pursue it on appeal, they would have had to first say that these facts are not supported by competent substantial evidence, the facts of no flooding, and then raised their taking claim. It was obvious that they couldn't maintain a claim that they weren't supported by competent substantial evidence. . . . So the point is you cannot start down a process, raising a tak-

Hence, the inverse condemnation claim is not barred by *res judicata.*[20]

█ Indeed, to establish *res judicata*, there must be identity of: 1) the thing sued for; 2) the cause of action; 3) the persons or parties to the action; and 4) the quality or capacity of the person for or against whom the claim is made. *Fields v. Sarasota Manatee Airport Auth.,* 953 F.2d 1299, 1307–08 (11th Cir.1992). If the second suit is based upon the same parties and the *same* causes of action, the prior judgment serves as an estoppel to all issues actually litigated and all issues that *could have been* litigated. *Agripost, Inc. v. Miami–Dade County,* 195 F.3d 1225, 1232 (11th Cir.1999); *Albrecht,* 444 So.2d at 12. If the second suit is based upon the same parties but *different* causes of action, then "the prior judgment will not serve as an estoppel except as to those issues actually litigated and determined in it." *Albrecht,* 444 So.2d at 12. To determine whether the cause of action is the same, a court must ask whether "the facts or evidence necessary to maintain the suit are the same in both actions." *Id.* (citations omitted).

█ In the instant case, the facts and evidence necessary to maintain the two suits are not the same. *Lake Lucerne Civic Ass'n v. Dolphin Stadium Corp.,* 878 F.2d 1360, 1371 (11th Cir.1989) (citing with approval *Dade County v. Nat'l Bulk Carriers,* 450 So.2d 213 (Fla.1984), for its recognition of *Albrecht*'s holding "that a claim of uncompensated taking constitutes a *separate and distinct* cause of action from an

action challenging the propriety of an agency's action in denying a permit. . . ."). *Atlantic Int'l,* 478 So.2d at 807–08 (citing with approval *Albrecht* ). As *Albrecht* noted, the facts necessary to maintain a takings action differ from the facts needed to determine the propriety of an agency action. 444 So.2d at 12. To prevail on a takings claim, the plaintiff must show diminution of property value and no alternative economically reasonable uses, whereas those showings are irrelevant to determining whether an agency action was proper. *Id.; Graham v. Estuary Prop., Inc.,* 399 So.2d 1374, 1380–81 (Fla.1981) (setting forth factors to consider when determining whether a taking has occurred). Because the causes of action are different, *res judicata* prevents relitigation of only those issues actually litigated. As determined above, inverse condemnation and its attendant issues were not actually litigated and hence *res judicata* does not bar Plaintiffs' inverse condemnation claims.

**2. Collateral Estoppel**

█ Defendants allege that, even if Plaintiffs' inverse condemnation claims are not barred by *res judicata,* Plaintiffs should be collaterally estopped from attacking factual findings related to the Hacienda Road Project and weir construction. Collateral estoppel prevents the same parties from relitigating issues that have previously been litigated and determined. *Agripost,* 195 F.3d at 1229 n. 7; *Carlisle v. Phenix City Bd. of Educ.,* 849 F.2d 1376, 1379 (11th Cir.1988) ("Collateral estoppel . . . depends on whether the . . . issue was

ings claim, and then abandon it in midstream once the factual record is not there. . . . I can't cite a case to you that says specifically that. It has not come up before.

(Doc. 65 at 21).

**20.** The cases cited by Defendants do not aid their position. For instance, *Wiregrass Ranch, Inc. v. Saddlebrook Resorts, Inc.,* 645

So.2d 374 (Fla.1994), held that a party may not unilaterally terminate the jurisdiction of the administrative agency in a proceeding "clearly within an agency's area of responsibility and jurisdiction as directed by the legislature." *Id.* at 376. In the instant case, Defendants have conceded, as they must, that the administrative hearing officer and agency lack authority and jurisdiction to make conclusions of law regarding the takings issue.

litigated and decided in the state judicial proceedings."); *Porter v. Saddlebrook Resorts, Inc.*, 679 So.2d 1212, 1214–15 (Fla. 2d DCA 1996). This doctrine applies only if: 1) the identical issues were presented in the prior proceeding; 2) there was a full and fair opportunity to litigate the issues in the prior proceeding; 3) the issues in the prior litigation were critical and necessary to the prior determination; 4) the parties were identical; and 5) the issues were actually litigated in the prior proceeding. *Porter*, 679 So.2d at 1214–15. In *Porter*, the court found that even though the issue was discussed in the final order and certain findings made thereon, the issue was not essential to the agency's final action and hence the issue was not litigated in the prior proceeding for purposes of collateral estoppel. *Id.* at 1215 ("the findings on that issue should not be used for purposes of collateral estoppel.").[21]

■ Similarly, in this case, even though the ALJ discussed whether the Hacienda Road Project and weirs caused flooding and made findings thereon, those findings were not necessary and critical to the broader issues of whether the excavation caused an emergency, whether the Emergency Order was valid, and whether Plaintiffs fell within certain rule exemptions.[22]

The Court finds that the Plaintiffs are not collaterally estopped from attacking factual findings related to the Hacienda Road Project and its impact because those findings were not critical and necessary to the disposition of the administrative proceeding. *Albrecht*, 444 So.2d at 12 (holding that estoppel did not bar the inverse condemnation claim because the facts and issues were not actually litigated in the prior proceedings).

### 3. Separate Counts for Taking of Easements and Taking of Real Property

■ Defendants assert that Plaintiffs cannot allege a taking of a drainage easement in a separate count from a taking of real property. Defendants are correct, for making out a successful claim of a taking of a drainage easement depends on a finding that Defendants' conduct rendered Plaintiffs' land useless and permanently deprived Plaintiffs of all beneficial enjoyment thereof. *Leon County v. Smith*, 397 So.2d 362, 364 (Fla. 1st DCA 1981) (*per curiam*) (upholding trial court's finding that a taking of an easement resulted from flooding "which rendered the land useless and permanently deprived plaintiffs of all beneficial enjoyment thereof."). Indeed, a person can be deprived of the use of a drainage easement but without damage, the litigant would have no cause of action. The damage resulting from the deprivation of a drainage easement *is* damage to the real property allegedly drained. For this reason, the causes of action are not separable, and Plaintiff must replead them as one.[23]

---

**21.** The Court notes, by way of semantics, that collateral estoppel prevents relitigation of *issues*. Even though certain factual findings are made, that does not necessarily mean that an *issue* was fully litigated.

**22.** This is so despite Plaintiffs' argument below that easement rights and evidence regarding the Hacienda Road Project were relevant and necessary to the administrative proceedings.

On this issue, both Defendants and Plaintiffs argued positions that are different from the positions taken herein. Plaintiffs argued that the Hacienda Road Project and its impact were relevant and crucial to their claims, whereas Defendants argued it was not. Ultimately, the actual findings make clear that *regardless* of this evidence, Plaintiffs were not exempt from permit requirements and hence the ALJ implied that, in the end, the evidence was irrelevant to the broader issue.

**23.** Clearly, a cause of action for a taking of an easement exists. *See, e.g., City of Miami Beach v. Belle Isle Apt. Corp.*, 177 So.2d 884,

### 4. Ripeness

Defendants move to dismiss Plaintiffs' takings claims to the extent they relate to a permit denial. Specifically, Defendants contend that, because Plaintiffs never sought a permit for their actions, their claims related thereto are not yet ripe. Plaintiffs are not, however, suing for relief from denial of a regulatory permit but rather for physical invasion of their property interests, regardless of a permit. For this reason, Plaintiffs' claims are ripe for adjudication.

### B. Counts V: Equal Protection

### A. Res Judicata

Defendants assert that Plaintiffs' federal equal protection claims are barred by *res judicata*. Plaintiffs argue that the ALJ and agency had no power to adjudicate their constitutional claims and that they deserve a trial court's ruling.

 A hearing officer in a Chapter 120 proceeding may not adjudicate certain constitutional issues. *Shinholster v. Graham*, 527 F.Supp. 1318, 1321–22 (N.D.Fla. 1981) (citing *Curtis v. Taylor*, 648 F.2d 946 (5th Cir.1980); *Gulf Pines Mem. Park, Inc. v. Oaklawn Mem. Park, Inc.*, 361 So.2d 695, 699 (Fla.1978) ("administrative hearing officer lacks jurisdiction to consider constitutional issues") (citation omitted); *Department of Admin., Div. of Pers. v. Dep't of Admin., Div. of Admin. Hearings*, 326 So.2d 187, 189 (Fla. 1st DCA 1976) (neither a hearing officer nor an agency has authority to declare an agency rule

unconstitutional on equal protection or due process grounds).[24] However, as noted above, *Key Haven* ruled that, where a litigant asserts that the agency applied a rule or statute in an unconstitutional manner, the litigant must raise its equal protection claims pertaining to that application of the agency rule in the district court of appeal. 427 So.2d at 156–57. Plaintiffs do not contest the holding of *Key Haven*, and concede that they had to bring any *state* equal protection claims on appeal to the district court. Plaintiffs assert, however, that because they made an *England–Jennings*[25] reservation in their amended Circuit Court complaint, their *federal* equal protection claims cannot be barred by *res judicata*.

An *England–Jennings* reservation allows a litigant to reserve his "constitutional claims for subsequent litigation in federal court by making on the state record a reservation as to the disposition of the entire case by the state courts' to preserve access to the federal forum." *Saboff v. St. John's River Water Mgmt. Dist.*, 200 F.3d 1356, 1359–60 (11th Cir.2000) (citations omitted). In order to make an effective *England–Jennings* reservation and thereby avoid *res judicata*, a litigant must clearly set forth its intentions to preserve its federal claims, "on the record, and *at the outset* of the state court claim[.]" *Id.* at 1360 (emphasis added); *Fields*, 953 F.2d at 1309 n. 10 (requiring litigant to make reservation "at the time he files his state law claims in state court."); *accord Koziara v.*

---

886 (Fla. 3d DCA 1965). There is no case law, however, to support Plaintiffs' position that the cause of action for a taking of a drainage easement can exist separate and apart from a cause of action for a taking of the real property that the drainage easement benefits.

**24.** All of these cases operated under the general rule that a hearing officer lacks juris-

diction to adjudicate a facial challenge, as opposed to an as applied challenge, to the constitutionality of an agency rule or statute.

**25.** This term derives from two seminal cases, *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), and *Jennings v. Caddo Parish School Board*, 531 F.2d 1331 (5th Cir. 1976).

*City of Casselberry,* 239 F.Supp.2d 1245, 1258 (M.D.Fla.2002) ("from the outset").

Plaintiffs here admit that they did not make their *England–Jennings* reservation until after the district court of appeal issued its decision on the administrative proceeding. (Doc. 65 at 45). Plaintiffs argue that the Court nonetheless should not deem their *England–Jennings* reservation as untimely because they did not have the opportunity to make the reservation "before a trial court" until filing their amended complaint after the district court of appeal issued its decision. (*Id.*). The case law does not stretch as far as Plaintiffs wish. In *England,* Justice Brennan wrote:

> [a party] may inform the state courts that he is exposing his federal claims there only for the purpose of complying with *Government & Civic Employees Organizing Committee C.I.O. v. Windsor,* 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957), and that he intends, should the state courts hold against him on the question of state law, to return to the District Court for disposition of his federal contentions. Such an explicit reservation is not indispensable; the litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he voluntarily did more than *Windsor* required and fully litigated his federal claims in the state courts.

375 U.S. at 421, 84 S.Ct. 461. Brennan's term "state courts" is not limited to a trial court, as evinced by the plural use of the word "courts." Case law since *England* confirms this notion with regard to administrative proceedings. *See, e.g., Sharpley*

*v. Davis,* 786 F.2d 1109, 1112 n. 2 (11th Cir.1986) (noting that, where a plaintiff wishes to preserve access to a federal forum, he must do so "at the earliest administrative level" or else "subsequent state court review of that initial administrative determination ... eliminates the opportunity to present such federal claims in a federal forum."). From a policy standpoint, this rule makes sense; a plaintiff cannot wait to suffer an adverse ruling in state court before it alerts Defendants of its intentions and thus receive a second bite at the apple. *Koziara,* 239 F.Supp.2d at 1258 ("a plaintiff cannot wait until it receives an unfavorable decision in state court and then adjudicate its claims in federal court."). For these reasons, the Court finds that Plaintiffs' *England–Jennings* reservation was not timely.

Thus, the Court further finds that Plaintiffs' equal protection claims are barred by *res judicata.* During the administrative proceedings, Plaintiffs freely and without reservation litigated their disparate treatment claim before the ALJ and did not appeal the fact findings to the district court of appeal. Where a party freely litigates an equal protection [26] claim, regardless of whether he seeks direct review of the decision, he effectively elects to forgo his right to bring those claims in federal court. *England,* 375 U.S. at 419, 84 S.Ct. 461.[27] Based on the foregoing analysis, Count V must be dismissed.

**C. Counts VI and VII: Due Process**

■■■ For the same reasons as stated in regard to the equal protection claims,

---

**26.** Under the Florida Constitution, the equal protection and due process standards are the same as the federal standards. *Duncan v. Moore,* 754 So.2d 708, 712 (Fla.2000) (adjudicating state and federal equal protection and due process claims together); *accord Rice v. State,* 754 So.2d 881, 884–85 (Fla. 5th DCA 2000).

**27.** Defendants also moved to dismiss Plaintiffs' equal protection claims for failure to state a cause of action. The Court need not address this issue, given its finding of *res judicata.*

Plaintiffs' federal due process claims, as they relate to the agency action, are barred by *res judicata.*

Plaintiffs' claims with regard to conduct that occurred subsequent to the administrative proceedings—namely conduct in relation to an alleged oral agreement between St. Johns and Plaintiffs—also must be dismissed. Although not barred by *res judicata* (because those allegations involve post-administrative hearing conduct), breach of an oral agreement or contract does not state a substantive due process claim. For these reasons, Counts VI and VII must be dismissed in their entirety.

### D. Count VIII: Declaratory Judgment; Express and Common Law Drainage Easements

Defendants St. Johns and FDOT move for summary judgment as to Count VIII, claiming that, as a matter of law, Plaintiffs do not have express or common law easements.

#### 1. Express Easements

#### a. By Plat

██ Plaintiffs seek a declaration that they have express easement rights in the drainage system within the Titusville Subdivision Plat, which provides for road rights of way. Defendants contend that the word "road," as used in the Legend of the Plat, is unambiguous and does not expressly provide for drainage easements.

While it would not, at first blush, seem that the word "road" would create ambiguities, in the context of easements law, it does. *See* Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 8.4 ("The scope of easements for a right of way granted in general terms has been the subject of much litigation. Courts have usually interpreted these conveyances as creating a broad right to use the easement for all reasonable purposes... the prevailing view is that utility poles and wires may be erected on a general right-of-way. Moreover, the installation of underground water, gas, or sewer pipes is usually deemed a reasonable use of a roadway easement."); *see also Fleming v. Napili Kai, Ltd.,* 50 Haw. 66, 430 P.2d 316, 319 (1967) (finding it "the usual and common practice [in Hawaii] to use roadway easements as rights of way for electricity, telephone, water and drainage facilities," and concluding that the road right of way in that case was reserved not just for ingress and egress but also for those other purposes).[28] No case has adjudicated whether it is usual and common to use roadway easements as rights of way for drainage facilities in Florida,[29] but some state case law[30] suggests that a roadway easement may encompass uses

---

**28.** The *Fleming* court so found because the decree at issue did not expressly state that the roadways were specifically and solely for ingress and egress, i.e., the "easement was without limitation or restriction." 430 P.2d at 318.

**29.** Plaintiffs cite *Joynt v. Orange County,* 701 So.2d 1249 (Fla. 5th DCA 1997), for the proposition that the term "road right of way" "necessarily includes the right to maintain drainage facilities such as drainage ditches, canals, and levies." (Doc. 57 at 32). What *Joynt* actually held was that the term "right of way" as used in the Florida Statute at issue could include a "road, canal, levee, or water control facility right-of-way right of way" because the legislature specifically provided for

that broad definition. *Id.* at 1250 (emphasis omitted). "[H]ad the legislature intended to limit [the statute] to a 'road' right of way condemnation, it would have done so in plain language." *Id.* In the instant case, the Plat does not use the same specific language as the statute construed in *Joynt.*

**30.** Modern statutory law also suggests that a roadway encompasses more uses than may be readily apparent. For example, Florida's Transportation Administration has defined "road" as including "associated sidewalks, the roadbed, the right-of-way, and all culverts, drains, sluices, ditches, water storage areas, waterways, embankments, slopes, retaining walls, bridges, tunnels, and viaducts necessary for the maintenance of travel and all

beyond what might appear on its face. *See, e.g., Nerbonne, N.V. v. Fla. Power Corp.,* 692 So.2d 928, 929–930 (Fla. 5th DCA 1997) (holding that a general grant of a right of way for public road purposes includes the right to install public utilities, such as a power line).[31]

The Court finds that the Plat herein is ambiguous, and thus the Court may accept extrinsic evidence in relation to its meaning. *Wilson v. Dunlap,* 101 So.2d 801, 805 (Fla.1958); *see also Golden Hills Golf & Turf Club, Inc. v. Spitzer,* 475 So.2d 254, 254–55 (Fla. 5th DCA 1985) (holding that the plat at issue was "obviously ambiguous" and therefore accepting extrinsic evidence to determine whether it showed that a bridle path was separate from or part of a dedicated road and thus not subject to an easement).[32] Accordingly, summary judgment is not proper.[33]

**b. By Warranty Deed**

Plaintiffs argue that they have express easements reserved in several deeds as follows:

1) A warranty deed dated May 4, 1997, wherein developers of the Titusville Fruit and Farm Lands Company conveyed title: "subject to right of way, as shown by said plat for public roads, and excepting rights of way for necessary ditches." (Doc. 57 at Ex. L).

2) A warranty deed dated June 10, 1915, wherein lot owners within the Subdivision conveyed title: "subject to right of way as shown by plats for public roads and excepting rights of way for necessary drainage ditches." (Doc. 57, Ex. M).

3) A warranty deed dated April 3, 1957, wherein the landowners conveyed title of Subdivision lots subject to the following provision: "the parties mutually have the right to enter on any part of the adjoining lands from time to time for the purpose of keeping the drainage ditches open and to work the roads." (Doc. 57, Ex. N).

4) An agreement for sale dated January 3, 1956, which reads:

The said lands are to be conveyed by warranty deeds and at the time of delivery of deeds the First Party is to furnish abstract of title showing it or its associates to have good and merchantable title of record to the same, or that said titles will be insurable or satisfactory to the Federal Housing Administration for insurance of mortgages on portions thereof, except only for roads, canals and mineral reservations and reservations that have been had in Trustee deeds of the Improvement Fund of Florida.

(Doc. 57, Ex. O).

▐ Defendants argue that, even if these deeds *refer* to easements, they do

---

ferries used in connection therewith." Fla. Stat. § 334.03(23).

**31.** In *Nerbonne,* the court noted that, generally, a power line, which does not interfere with highway travel, is a proper use of a highway easement and does not pose an additional burden on the underlying estate. 692 So.2d at 929. Defendants contend that *Nerbonne* is inapposite because, unlike power lines, the drainage ditches at issue herein *would* interfere with road travel and would impose an additional burden on the underlying estate. Defendants ultimately may be correct but the Court cannot resolve these factual disputes at this stage.

**32.** In *Golden Hills Golf,* after finding that the plat "was obviously ambiguous," the court looked to the affidavits submitted by appellees and determined that appellees had met their initial burden of demonstrating the plat's meaning. The burden thus shifted to appellant to provide counter evidence. Appellant failed to provide anything other than the plat itself, and thus, the court found in favor of appellees. 475 So.2d at 255.

**33.** Plaintiffs dedicate a section of at least one of their briefs to implied easements. Plaintiffs did not allege that they had implied easements, and hence the Court will not address Plaintiffs' arguments in relation thereto.

not *create* easements. The case law is clear, however, that an easement can be expressly created through reservations in a deed or other public document. *Walters v. McCall,* 450 So.2d 1139, 1142 (Fla. 1st DCA 1984) (easement may be created by grant, which includes creation by reservation in a deed); *Hensel v. Aurilio,* 417 So.2d 1035, 1037 (Fla. 4th DCA 1982) (easement may be created by an express grant or reservation; prescription; or implication).

■ Plaintiffs have presented sufficient evidence to create a material fact dispute as to whether the deeds at issue created easements by reservation. Where the wording of a deed is ambiguous such that the scope of an easement cannot be discerned from the deed's plain language, "the legal extent of the right must be ascertained from the intention of the parties, in light of the surrounding circumstances, at the time the easement right was created." *Walters,* 450 So.2d at 1142 (emphasis omitted); *see also Star Island Assoc. v. City of St. Petersburg Beach,* 433 So.2d 998, 1004 (Fla. 2d DCA 1983) (where a party relies upon the phrase "subject to" to create an easement by reservation, the words at best "create an ambiguity to be resolved by determining whether the intention of the parties, in light of surrounding circumstances and agreements, was to create an easement.") (citation omitted); *accord Corrigans v. Sebastian River Drainage Dist.,* 223 So.2d 57, 58 (Fla. 4th DCA 1969) (*per curiam* )).[34] Summary judgment is therefore inappropriate.

### 2. Common Law Easements

■ Defendants assert that there is no common law right to accelerate flow of surface water through artificially created ditches and thus that Plaintiffs cannot as a

matter of law possess common law drainage easements. *Seminole County v. Mertz,* 415 So.2d 1286 (Fla. 5th DCA 1982), stated three general rules as follows: 1) an upper landowner may improve and increase natural drainage of his land so long as he acts reasonably and does not divert flow; 2) a lower landowner is subject to an easement for such flow as the upper landowner is allowed to cast upon him; and 3) a landowner may not gather surface waters that would naturally flow in one direction and divert them from their natural flow to cast them upon lands of the lower landowner to his detriment. *Id.* at 1289. A later Supreme Court case, *Westland Skating Center, Inc. v. Gus Machado Buick, Inc.,* 542 So.2d 959 (Fla.1989), confirmed the second rule, i.e., that the lower landowner is subject to an easement, and added, "when any party improves his land, thereby causing surface waters to damage his neighbor's property, the reasonable use rule shall be applied . . . ." *Id.* at 963. The case law does not suggest as Defendants urge, i.e., that a landowner may not as a matter of law accelerate flow of surface water through ditches. Indeed, in *Robertia v. Pine Tree Water Control District,* 516 So.2d 1012, 1013 (Fla. 4th DCA 1987), and *Corrigans,* 223 So.2d at 58, the courts looked at the surrounding circumstances and the parties' intent at the time the easements were created to determine their scope. This Court must do the same. *See Walters,* 450 So.2d at 1142; *Star Island Assoc.,* 433 So.2d at 1004; *Corrigans,* 223 So.2d at 58. Accordingly, Count VIII stands.

### E. Counts IX and X: Trespass and Nuisance

■ As a matter of law, Plaintiffs cannot state a cause of action against St.

---

**34.** This is so because the words "subject to" generally are words of obligation, not con-

tract. *Star Island Assoc.,* 433 So.2d at 1004.

Johns for recovery of damages due to floodwaters associated with St. Johns' approval of a permit for FDOT to block the drainage system. Fla. Stat. § 373.443.[35] For this reason, Plaintiffs' trespass and nuisance claims must be dismissed to the extent they seek damages against FDOT and St. Johns.

### F. Count IX: Permanent Injunctive Relief

Defendants contend that Plaintiffs' request for injunctive relief is an attempt to collaterally attack the results of a prior legal proceeding. For the reasons stated above, *res judicata* and collateral estoppel do not bar Plaintiffs' claims with regard to flooding. Hence, Plaintiffs' request for injunctive relief will not, at this stage, be dismissed.[36]

### G. Count XII: Equitable Estoppel

Defendants argue that Plaintiffs have failed to state a claim for equitable estoppel because they failed to allege a representation by a St. Johns agent upon which they relied. Plaintiffs did not respond to Defendants' arguments, so this portion of the Motion is granted as unopposed.[37]

### H. Counts Against USFWS

■ USFWS moves to dismiss for two reasons. First, USFWS seeks a more def-inite statement as to which Counts are alleged against it. The Court agrees that the Third Amended Complaint is improperly unspecific as to whether Counts VI—XII are alleged against USFWS, St. Johns, FDOT, or all three Defendants. Plaintiffs, upon repleading, must make clear to whom each Count applies. Fed. R.Civ.P. 12(e) (court may grant motion for more definite statement where a pleading is "so vague or ambiguous that a party cannot be reasonably required to frame a responsive pleading").

■ Second, with regard to Count VIII, USFWS contends that Plaintiffs improperly seek to quiet title against the United States via the Florida declaratory judgment statute rather than the federal Quiet Title Act, 28 U.S.C. § 2409a. The Quiet Title Act waives sovereign immunity to suits that seek "to adjudicate a disputed title to real property in which the United States claims an interest . . . ." 28 U.S.C. § 2409a(a). This statute provides the only means by which to challenge federal ownership of real property. *See Block v. North Dakota,* 461 U.S. 273, 286, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) ("Congress intended the QTA to provide the exclusive means by which adverse claimants can challenge the United States' title to real property."). To the extent Count VIII

---

**35.** This statute provides:

No action shall be brought against the state or district, or any agents or employees of the state or district, for the recovery of damages caused by the partial or total failure of any stormwater management system, dam, impoundment, reservoir, appurtenant work, or works upon the ground that the state or district is liable by virtue of any of the following:
(1) Approval of the permit for construction or alteration.
(2) The issuance or enforcement of any order relative to maintenance or operation.
(3) Control or regulation of stormwater management systems, dams, impound-ments, reservoirs, appurtenant work, or works regulated under this chapter.
(4) Measures taken to protect against failure during emergency.
Fla. Stat. § 373.443.

**36.** FDOT argued in one sentence in its memorandum of law that Plaintiffs have not satisfied the requirements for obtaining an injunction. (Doc. 52 at 3). Because the issue has not been fully briefed, the Court will not rule on it at this time.

**37.** Defendants are correct, even if Plaintiffs had responded. (*See* Doc. 45 at ¶¶ 164–72: no allegation of specific misrepresentations by St. Johns' agent).

seeks relief against USFWS, it is dismissed without prejudice for this reason.

## IV. Conclusion

Based upon the foregoing analysis, it is therefore **ORDERED AND ADJUDGED** that:

1) USFWS' Motion to Dismiss (Doc. 46) is **GRANTED**. The Third Amended Complaint (Doc. 45) is dismissed in its entirety as against USFWS for failure to plead a definite statement of which Counts apply to USFWS. Moreover, Count VIII (declaratory relief) is dismissed as to USFWS for the reasons stated herein.

2) St. Johns' Motion to Dismiss (Doc. 47) is **GRANTED in part and DENIED in part**. It is **GRANTED** to the extent it seeks to dismiss Counts V (equal protection), VI–VII (due process), IX (trespass), X (nuisance), and XII (estoppel). It is **DENIED** to the extent it seeks to dismiss Counts I–IV (inverse condemnation), VIII (declaratory relief), and XI (injunctive relief).

3) FDOT's Motion to Dismiss (Doc. 51) is **GRANTED in part and DENIED in part** for the same reasons as described with respect to St. Johns' Motion.

4) Defendant St. Johns' and FDOT's Motions for Summary Judgment as to Count VIII (Docs. 47 and 51) are **DENIED**.

Plaintiffs shall have thirty (30) days in which to file a Fourth Amended Complaint in a manner consistent with this Order.