PER CURIAM.
This cause, a suit for inverse condemnation, is before us by petition for review as conflicting with this Court’s decisions in Albrecht v. State, 444 So.2d 8 (Fla.1984) *806 and Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153 (Fla.1982). We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution.
The facts leading to this action are recounted in detail in the First District Court of Appeal opinion. State v. Atlantic International Investment Corp., 438 So.2d 868 (Fla. 1st DCA 1983). We mention here but a few highlights. In 1967 and 1968 Atlantic International Investment Corporation bought approximately 14,000 acres of land in Volusia and Brevard Counties and platted them into a subdivision, Cape Atlantic Estates (CAE). In 1967 the South County Drainage District (SCDD) was created for the purpose of draining and conserving the above-mentioned property. Between 1967 and 1972 Atlantic sold over ninety-five percent of the lots under agreements for deed disclosing that the lots were inaccessible and needed drainage and representing that the land would be improved by graded dirt roads and drainage by December 31, 1973. The costs for the improvements were to be advanced by Atlantic and repaid through assessments against the lots. By 1970 Atlantic had completed a twelve-mile main outfall canal.
In 1971 SCDD petitioned in circuit court to amend its reclamation plan. Volusia County intervened, claiming that its home rule charter had abolished SCDD, and the Department of Pollution Control (DPC), predecessor of the Department of Environmental Regulation (DER), intervened and asserted permitting authority. The judgment, denying the petition to amend the reclamation plan and holding that SCDD had been abolished and its powers transferred to Volusia County, was affirmed on appeal. South County Drainage District v. Brevard County, 277 So.2d 31 (Fla. 1st DCA), cert. denied, 281 So.2d 211 (Fla.1973). In December of 1973, following the appeal, Atlantic and Volusia County reached an agreement whereby the county formed a special taxing district with the same name and functions as SCDD.
Atlantic discussed permit proposals with DPC at the conclusion of the SCDD litigation, and a permit application was filed in September of 1974. The permit was denied by DPC in November. In early 1975 Atlantic filed a petition for declaratory judgment against several state entities, including DPC and Volusia County, with the objective of proceeding with its project. Alternatively it sought compensation from the state for a taking of property without compensation. At a hearing on March 11, 1975, the trial court stated that it would retain jurisdiction over the taking issue while administrative remedies were sought.
In May of 1976 DER entered a final order denying the permit. Atlantic petitioned for writ of certiorari in the First District Court of Appeal. Prior to the court’s decision, Atlantic and DER entered into a stipulated agreement providing for the issuance of a permit if Atlantic complied with the terms set out therein. The parties’ joint motion for approval, stating that it resolved or rendered moot all issues formerly in dispute before the court, was approved on June 29, 1977, and the DER order on review was vacated. In August of that year St. John’s River Water Management District notified Atlantic that it was considering asserting permit jurisdiction over the property. Atlantic notified the Division of Florida Land Sales and Condominiums (DFLS&C) in March of 1978 that completion of the improvements was impossible.
Atlantic went back to circuit court on the taking issue, filing an amended and' supplemental complaint against DFLS&C, DBR, DER, Volusia County, St. John’s and the state. Atlantic complained that because of the new assertions of jurisdiction by St. John’s and the DER requirement of a thirteen-month baseline study before commencement of construction, it was impossible for Atlantic to complete the project; that the increases in the complexity of the improvements, the increased cost of labor and materials, increases in interest rates, and probable additional delays and requirements from St. John’s made Atlantic’s fi *807 nancial ability to complete the project insufficient and that there was no workable alternative. All but DER and the state were ultimately dismissed as party defendants. Purchasers of the lots intervened and were certified as representatives of their class. The circuit court found that the cumulative effects of the actions of the various state agencies constituted a taking as of September 1, 1977. The circuit court was especially influenced by the increased cost of improvements, primarily stabilized roads and the extra handling of materials.
The district court reversed, finding that under this Court’s decision in Key Haven Atlantic’s action in the district court foreclosed proceeding with the taking claim in circuit court. The court found that the judgment would be reversed in any event, as the facts did not support the finding of a taking. We disagree with the district court that Atlantic was foreclosed from proceeding with the taking claim in circuit court, but approve its decision that the facts do not support the finding of a taking.
The district court misread our decision in Key Haven. As we said in Albrecht v. State, 444 So.2d 8, 12-13 (Fla.1984) (citations omitted):
We find that in the instant case the petitioners’ claim of uncompensated taking constitutes a separate and distinct cause of action from that litigated previously. In the first action the petitioners were challenging the propriety of the agency’s actions. The determination, judicially or otherwise, that the action was proper under the applicable statute does not necessarily also determine that there is no taking, nor does it necessarily bar the valid exercise of police power. It is a settled proposition that a regulation or statute may meet the standards necessary for exercise of the police power but still result in a taking. In addition, the facts necessary to maintain the taking action are different. There must be a diminution in value of the property as well as a lack of alternative uses. Under a constitutionally valid statute providing for protection of the public welfare, those facts are irrelevant to the determination of propriety of the agency action. The first duty of the agency is to protect the public in compliance with the law, whether or not that results in ability to use the property. Neither the doctrine of res judicata nor estoppel by judgment apply to this case because the second cause of action is not the same as the first and the issues now presented were not actually litigated in the previous proceedings. It is unnecessary for us to determine whether it would be fair to apply res judicata in this ease since that issue presumes proper application of the doctrine in the first place.
Permitting the petitioners to bring their claim in circuit court does not conflict with our decision in Key Haven. In that case we provided alternative methods of bringing a claim of inverse condemnation once all executive branch review of the action has been completed. Direct review in the district court of the agency action may be eliminated and proceedings properly commenced in circuit court if the aggrieved party accepts the agency action as proper. The point is that the propriety of the agency action must be finally determined before a claim for inverse condemnation exists. In Key Haven we merely provided an alternative to direct review for those parties who wish to accept the propriety of the action. This was not meant to extinguish the property owner’s right to bring the separate claim of inverse condemnation in circuit court at the conclusion of all judicial as well as executive branch appeals regarding propriety of the action. Whether the party agrees to the propriety or it is judicially determined is irrelevant. In either case the matter is closed and a claim of inverse condemnation comes into being. We emphasized that once a party agrees to the propriety of the action and chooses the circuit court forum, it is estopped from any further denial that the action itself was proper. This is not to say that once a party chooses to litigate the propriety of the action through the district court that *808 it is estopped from bringing a claim of inverse condemnation in circuit court.
Clearly Key Haven prevented neither Atlantic, nor the intervenors who did not participate in the permit proceedings, from bringing a taking claim in circuit court when that taking issue has not been addressed or resolved in the district court. We disapprove the district court’s reasoning on this point.
The district court based its finding that there was no taking on two points: 1) the increased costs of stabilized roads are not attributable to DER as they were not required by the terms of the negotiated stipulation that Atlantic entered into voluntarily and were not required by DER; 2) Atlantic’s delay in not applying for a permit until 1974 was Atlantic’s choice and therefore not attributable to DER. We agree with the district court.
Whether a regulation amounts to a taking depends on the circumstances of each case. Graham v. Estuary Properties, Inc., 399 So.2d 1374, 1380 (Fla.), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981). We find that under the circumstances of this case the trial court’s final judgment in favor of petitioners is not supported by competent substantial evidence.
We agree with the district court that DER did not require the stabilized roads and that Atlantic caused the delay in the permit process by failing to file a permit application until September of 1974. Moreover, by entering into the stipulated agreement with DER, Atlantic participated in its terms. Having thus agreed, Atlantic is precluded from asking the state to buy its undesirable land. As for St. Johns, which was considering asserting jurisdiction over CAE, we can only speculate as to whether it would have done so and, if so, whether its regulation would have constituted a taking for which the state would have had to pay.
The district court decision is approved.
It is so ordered.
OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
BOYD, C.J., concurs specially with an opinion.
ADKINS, J., dissents.