*296
 
 POLEN, J.
 

 The City of West Palm Beach appeals the amended final judgment of the trial court, finding that the City’s demolition of a structure owned by the Robertses constituted a taking for which the Robertses were entitled to compensation. The Rob-ertses timely appeal the trial court’s order, granting the City’s motion to quash their complaint for writ of mandamus.
 
 [1]
 
 We find the trial court correctly determined that the Robertses were not afforded proper notice; consequently, we hold the Roberts-es are entitled to compensation from the City for the City’s act of demolishing their structure. We further hold that because execution on the judgments was automatically stayed by the City’s filing of a notice of appeal, the trial court did not err when it granted the City’s motion to quash the Robertses complaint for a writ of mandamus.
 

 The City abates a public nuisance pursuant to the City of West Palm Beach Florida 2002 Amendments to the Standard Unsafe Building Abatement Code, 1985 Edition, Ordinance No. 3522-02 (USBAC). Section 101.2, USBAC, authorizes the City to protect the public safety, health and general welfare of the public by protecting against unsafe buildings, structures or premises in the City. Section 301.1.1, US-BAC, requires the building official to inspect, or cause to be inspected, any building, structure or portion which is, or may be, unsafe; once such a finding is made, he is mandated to initiate proceedings to cause the abatement of the unsafe condition by repair, vacation and/or boarding and securing, or demolition or combination thereof. Section 201.11, USBAC, establishes the criteria for when a building and/or structure is considered “unsafe.”
 

 The Robertses owned a small wood-framed house (structure) located in a “historic district” of West Palm Beach. A fire occurred in the structure in 2002, resulting in smoke damage to the interior.
 
 [2]
 
 In September 2002, the Robertses obtained a permit to repair the damage caused by the fire and performed an interior demolition of the structure, removing a significant portion of the structure’s interior to rectify the damage the fire had caused.
 
 [3]
 
 After commencing work on the structure, the Robertses discovered that additional work, beyond the scope of the original permit, was needed; as a result, they stopped work, obtained a boarding permit, and secured the property by boarding the windows and doors. The discovery of the additional damage required them to create a comprehensive building plan to remodel the entire house. Because the structure was located in a “historic district,” the City’s permitting process required the Robertses to submit the building plans to the City’s Historic Preservation Planning Division (Historic) of the planning department as a condition precedent to obtaining a building permit for the renovation of the entire structure.
 

 In May 2004, the City’s Building Official inspected the structure and declared it to be unsafe and a public nuisance under the USBAC. Thereafter, Historic approved
 
 *297
 
 the modified construction plans submitted by the Robertses and issued them a “certificate of appropriateness”
 
 [4]
 
 on May 10, 2005, which would have allowed the Rob-ertses to obtain a building permit for the complete renovation of the house. According to the Robertses, during the entire time that they were involved in the permitting process, the structure remained boarded and secured. The Robertses also maintained they did not receive notice that the structure was unsafe or that the City was contemplating demolishing the structure. When the City started demolition proceedings, Historic issued a “do not demolish” order in response. Neal Melick, the City’s chief building official, issued an “override” order to Historic on March 5, 2005, which resulted in the demolition of the structure. Thus, after the Robertses obtained the “certificate of appropriateness” from Historic, but before they obtained the final building permit, the City demolished the structure on August 5, 2005.
 

 After learning that the structure was demolished, the Robertses sued the City for inverse condemnation, claiming that a “taking” had occurred when the City demolished the structure. Following a bench trial, an order was entered by the trial court on March 27, 2008, stating, in pertinent part:
 

 Based upon the testimony and evidence presented, the Court is not convinced that the City provided Plaintiffs with the proper notice required after the building official made a determination to demolish the structure. It makes no sense that an owner who is pursuing permits on the very structure at issue would not contact the City, if notice was given, or to pursue additional remedies. It is noted that a “taking” may consist of an entirely negative act, such as destruction.
 
 Kirkpatrick v. City of Jacksonville,
 
 312 So.2d 487 [, 490] (Fla. 1st DCA 1975).
 

 Following a jury trial on damages, the trial court entered a final judgment on February 11, 2009, which incorporated the March 27, 2009 interlocutory order.
 
 [5]
 
 On November 23, 2009, the Robertses filed a complaint for writ of mandamus, seeking to compel the City to satisfy the judgments. After a hearing, the trial court dismissed the Robertses’ complaint. This appeal followed.
 

 “A trial court’s finding of liability in an inverse condemnation suit is presumed correct and its findings will not be disturbed on appeal if supported by competent, substantial evidence.”
 
 Dep’t of Agric. & Consumer Servs. v. Bogorff,
 
 35 So.3d 84, 89 (Fla. 4th DCA 2010) (citing
 
 Atl. Int’l Inv. Corp. v. State,
 
 478 So.2d 805, 808 (Fla.1985)). Section 302.1.4, USBAC, provides: .
 

 The notice shall be served either personally or by certified mail, postage prepaid, return receipt requested, to each person at the address as it appears on the official public records. If addresses are not available on any person required to be served the notice, or in the event a notice sent by either registered or certified mail shall be returned undelivered, the building official shall publish a notice of condemnation once (1) a week for four (4) consecutive weeks in a newspaper of general circulation within the City of West Palm Beach and shall
 
 *298
 
 mail a notice addressed to such person to the address of the building or structure involved in the proceedings. A copy of such notice(s) and order(s) shall be posted in a conspicuous place at city hall or the courthouse and upon the dwelling or structure involved. The failure of any person to receive notice, other than the owner of record, shall not invalidate any proceedings under this section. Service by certified or registered mail as herein described shall be effective on the date the notice was received as indicated on the return receipt. [Emphasis added].
 

 Here, the trial court found that the City had not sent the proper notice to the Robertses. Thus, the Robertses had been denied the opportunity to contest the finding that the structure was unsafe and required demolition. Competent substantial evidence supports that conclusion, as no evidence showed that when the certified letters to the Robertses were returned unclaimed, a notice was sent by regular mail, as required by the ordinance. Mr. Roberts testified that he had not received any notice, nor did he see a notice of posting on the structure. While the City offered evidence of substantial compliance, the Robertses’ evidence supported the trial court’s findings. Because the City failed to properly notice the Robertses of them decision to demolish, the Robertses had no opportunity to contest the proceedings and prevent destruction of the structure, all the while they were working with Historic to restore the structure.
 

 The City argues that the lower court improperly allowed evidence concerning the propriety of the City’s actions in demolishing the structure and improperly considered this evidence in making its determination that a taking occurred. In
 
 Atlantic International Investment Corp. v. State,
 
 478 So.2d 805 (Fla.1985), the supreme court held that “the propriety of the agency action must be finally determined before a claim for inverse condemnation exists,” and “once a party agrees to the propriety of the action and chooses the circuit court forum, it is estopped from any further denial that the action itself was proper.”
 
 Id.
 
 at 807-08 (citing
 
 Albrecht v. State,
 
 444 So.2d 8, 12-13 (Fla.1984)). The Florida Supreme Court affirmed this principle in
 
 Department of Agriculture & Consumer Services v. Polk,
 
 568 So.2d 35, 38 (Fla.1990): “[T]he propriety of an agency’s action may not be challenged in an inverse condemnation proceeding.”
 
 Id.
 
 at 38 (citing § 253.763(2), Fla. Stat. (1985);
 
 Dep’t of Agric. & Consumer Servs. v. Mid-Fla. Growers, Inc.,
 
 521 So.2d 101, 103 n. 1 (Fla.),
 
 cert. denied,
 
 488 U.S. 870, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988)). In
 
 Janson v. City of St. Augustine,
 
 468 So.2d 329, 330 (Fla. 5th DCA 1985), the Fifth District held:
 

 Although a challenge to the administrative decision via appeal does not extinguish a suit for inverse condemnation at the conclusion of the appeal,
 
 Albrecht,
 
 a filing of an inverse condemnation suit forecloses a party from challenging the correctness of an administrative decision.
 
 Key Haven [Associated Enters., Inc. v. Bd. of Trustees of the Internal Improvement Trust Fund,
 
 427 So.2d 153 (Fla.1982) ].
 

 However, the doctrine of exhaustion of administrative remedies is a judicial doctrine which must yield where a party’s constitutional rights are infringed in such a manner that the party has no administrative remedy.
 
 See State Dep’t of Envtl. Prot. v. PZ Constr. Co.,
 
 633 So.2d 76 (Fla. 3d DCA 1994). The Robertses were never properly notified of the City’s intent to demolish. Consequently, the Robertses were denied the opportunity to contest the finding that the structure was unsafe and
 
 *299
 
 required demolition. As such, we hold that the trial court properly determined, in the inverse condemnation action, whether a “taking” had occurred and whether the Robertses were afforded proper notice. We further hold that the record supports the trial court’s findings as to both issues.
 
 [6]
 

 Finally, the Robertses appeal the trial court’s order granting the City’s motion to quash their complaint for a writ of mandamus. Based on the City’s filing of notices of appeal in connection with the two final judgments entered by the trial court, execution on the judgments was automatically stayed. Thus, the trial court properly granted the City’s motion to quash.
 
 See
 
 Fla. R.App. P. 9.310(b)(2) & (e);
 
 St. Lucie Cnty. v. N. Palm Dev. Corp.,
 
 444 So.2d 1133, 1134-35 (Fla. 4th DCA 1984) (“It is apparent that [rule 9.310(b)(2) ] intends that adverse judgments appealed by a governmental agency are automatically stayed.”).
 

 Affirmed.
 

 WARNER, J., and EHRLICH, MERRILEE, Associate Judge, concur.
 

 [1]
 

 . This court consolidated the bifurcated inverse condemnation case, from which the City appeals, with the Robertses’ suit for mandamus, from which the Robertses appeal.
 

 [2]
 

 . At this time, Mr. Roberts was employed as the project manager for Lance Concrete, a state-certified general contractor, which specializes in residential rehabilitation, and which later became the contractor of record for all repairs made to the structure.
 

 [3]
 

 .The interior demolition included the removal of the plumbing, the partition and interior dividing walls, the ceiling, the drywall, and the existing floor. As a result of the interior demolition, the structure was uninhabitable.
 

 [4]
 

 . This certificate advised: "You may now proceed with the routine building permit process through the building division.”
 

 [5]
 

 . In subsequent orders, the trial court awarded the Robertses $36,066, plus statutory interest, in compensation for the taking; $8,833.83 in costs; $72,786 in attorney's fees; and $3,840 in expert witness costs.
 

 [6]
 

 . The trial court also found that based upon the building inspector’s testimony and onetime inspection from the outside of the structure, it was not clear from the evidence presented that the structure was unsafe. This finding is also supported by competent substantial evidence. Although the building official and his inspector testified as to the conditions that allegedly made the structure "unsafe,” the trial judge, as the trier of fact, found the evidence insufficient to support the City's contention that the structure was actually "unsafe.” The trial court was in the best position to weigh the evidence. We decline to reweigh this evidence on appeal, as the record demonstrates that competent substantial evidence supports the trial court's findings.